McDonough *v.* Loughlin.

McDONOUGH, appellant, *vs.* LOUGHLIN and CASSIDY, respondents.

Where an objection to the competency of a witness examined before a surrogate is not raised there, it will be deemed to have been waived, and will be of no avail on appeal.

Where the subscribing witnesses to a will subscribe their names at the end of a memorandum of erasures and interlineations which is immediately below the attestation clause, this is a sufficient signature by them.

The memorandum is merely a part of the certificate, which, taken together, states that the paper *as altered* was executed by the testator and attested by the witnesses.

Where a testator said to one of the subscribing witnesses, " Mr. McC. [the scrivener) will want you to be a witness to the will ;" and the scrivener read the attestation clause to the testator, and asked him whether he wished the persons

McDonough v. Loughlin.

present to be witnesses to the will, and he said he did: *Held*, that this was a sufficient *request* of the witnesses to become such.

It is not necessary that a testator should himself formally repeat the words. It is enough if he directly and audibly adopts the language of another, used in his presence and hearing.

The admission and examination of an executor and trustee as a witness to prove the execution of a will, does not annul his appointment of executor, or the legacies to him as a trustee, where nothing is given to him, nor is any appointment conferred upon him, for his own personal use, but all is fiduciary and for the benefit of others.

The fact that the donee of a mere naked power may be entitled to a compensation for his services, does not necessarily render him beneficially interested in the execution of the power.

Nor will the circumstance that an executor is entitled to commissions for his services, render him an incompetent witness to establish the will.

Those commissions are allowed by statute, by way of compensation for the executors' services, and are not a gift under the will.

THIS was an appeal from a decree of the surrogate of the county of Kings, admitting the will of James McDonough, late of the city of Brooklyn, to probate, and determining that Eugene Cassidy was not disqualified from acting and taking letters testamentary as one of the executors of the said will, and that John Loughlin and Eugene Cassidy were entitled to receive letters testamentary as executors of the said James McDonough. On the 2d day of Dec. 1853, Eugene Cassidy appeared before the surrogate and presented his application in writing, setting forth that he was an executor named in the last will and testament of the said James McDonough deceased; that the deceased was, at the time of his death, an inhabitant of the county of Kings, and died there on the 6th day of Oct. 1853; that the said last will and testament related exclusively to personal estate; stating also the names and places of residence of the next of kin of the deceased, and asking that the said last will and testament might be proved, and letters testamentary granted thereon. A citation was accordingly issued, returnable on the 20th day of January, 1854. On that day Eugene Cassidy, the executor, appeared in person and by A. McCue, Esq. his counsel. James McDonough, a nephew of the deceased, also appeared in person and by counsel. The said Eugene Cassidy,

who was one of the subscribing witnesses to the will, was examined as a witness, and testified to the due execution of the will, by the testator, in his presence. On his cross-examination he testified that the will was drawn by Mr. McCue, who read the will to the testator and asked him if there was any thing else he wished to insert. The testator said no; that Mr. McCue then said " you sign this as your last will and testament?" and the testator said " I do," and signed it, on the table, by the bed; that the witnesses signed immediately after he did; McCue telling the deponent, at the time, he was to sign the will as a witness ; that previous to the signature by the witness, the testator said to him "Mr. McCue will want you to be a witness to the will; he will want three witnesses to it." A. McCue, the other subscribing witness, testified that some additions and alterations were made in the will, after he arrived ; that he read the will to the testator, who then signed it; that the testator spoke of its requiring three witnesses; the witness told him that two witnesses were all that were required; and Mr. Cassidy and himself would be sufficient ; that the witness read the attestation clause to the testator, and *asked him whether he wished him (McCue) and Cassidy to be witnesses to the will, and he said he did.* The testator, by the second clause of the will, gave to Eugene Cassidy $1000, " to be applied by him to certain uses and purposes heretofore made known to him, and the carrying out of which I intrust to him." He then directed his executors to invest various sums, and pay the interest thereof to individuals named, and for charitable objects particularly specified. By the 5th clause he gave to Cassidy the right of presenting three young men to an ecclesiastical education provided for in the will ; with power to nominate and appoint, by will, a successor to said power of presentation. And lastly he gave, bequeathed and devised to John Loughlin, Roman Catholic bishop elect of the diocese of Brooklyn, and to the Rev. Eugene Cassidy, all of his estate, wheresoever situate and not particularly devised and bequeathed by said will, for the uses and purposes previously set forth. And he appointed them and the successor of them, executors and trustees of his will ; there-

McDonough *v.* Loughlin.

by giving unto them, and the successors of them, such powers as might be necessary to carry into effect the provisions of said will. At the foot of the will was the attestation clause, on the left of the testator's signature ; below which was a memorandum of the erasures and interlineations in the will. And the names of the attesting witnesses were subscribed at the end of this memorandum.

The surrogate decreed that the will was duly executed by the testator, who was competent to bequeath personal estate ; that the will was a valid will of personal estate, and that the proofs thereof were sufficient. And he ordered that the will, with the proofs and examinations, be recorded ; and that letters testamentary should issue to the executors named therein. From this decree James McDonough, one of the heirs and next of kin of the decedent, appealed.

*S. B. Brophy,* for the appellant. I. The will was not executed, or attested, according to the requirements of the revised statutes. (1.) There is no signature of any witness, at the end of the will. The statute requires that there shall be at least two attesting witnesses, each of whom shall sign his name at the end of the will, at the request of the testator. (2 *R. S.* 124, § 32 ; 2 *Curteis,* 342, 343 ; 8 *Paige,* 488.) (2.) Signing the memorandum of alterations, is not signing at the end of the will, within the meaning of the statute. (*Maguire* v. *Kerr,* 2 *Bradf.* 254, *and cases there cited.*) (3.) There is no evidence to show that the decedent requested Eugene Cassidy or A. McCue to witness the will.

II. Assuming that the will was duly executed, the surrogate erred in granting letters to Eugene Cassidy, on the ground that he was a necessary subscribing witness to the will. (2 *R. S.* 125, § 42, 3*d ed.*) (1.) The whole interest vests in the executor, on the death of the testator. (9 *Wend.* 302 ; 2 *Hill,* 181.) An executor has an interest in the estate to the extent of his commissions. (2 *R. S.* 137, § 62. *Burritt* v. *Silliman,* 16 *Barb.* 198. *Taylor* v. *Taylor,* 1 *Rich.* 531. *Tucker* v. *Tucker,* 5 *Iredell,* 161. 4 *Hawks, N. C.* 141. *Dominick* v. *Michael,*

4 *Sandf. S. C. R.* 401. *Judson* v. *Gibbons,* 5 *Wend.* 224.)
(2.) The fifth clause of the will gives to Eugene Cassidy the
right of presenting three young men to an ecclesiastical educa-
·tion, with power to appoint his successor to this right. This is
a beneficial appointment. (2 *Black. Com.* 22, *N. Y. ed.* 1849.)
(3.) The statute provides, that a subscribing witness to a will
cannot take any interest, because the effect of his testimony
would be to secure for himself all the benefits conferred on him
by the will. (7 *Barb.* 554. 8 *Adolph. & Ellis,* 215. 16 *id.*
747, 745.)

III. The will was materially altered in several parts, without
the knowledge or consent of the decedent; such alterations
are presumptively fraudulent. (1.) There is no evidence to
show when, where, or at whose instance the alterations were
made in the will. Alterations apparent on the face of a
will, are presumed to have been made after the will was
executed, unless evidence to the contrary is adduced. (*Shall-
cross* v. *Palmer,* 16 *Adol. & Ellis, N, S.* 747.) Where fraud
is apparent the *onus probandi* is thrown with great strict-
ness on those who seek to establish the will. (*Park* v. *Olloff,*
2 *Phillim. Eccl. Rep.* 323. 1 *id.* 187, 493.) (2.) Omitting
to produce evidence in elucidation, which is in the power of
the party, or within his knowledge, shall be holden to turn
every doubt against him. (1 *Stark. Ev.* 34. 3 *id.* 487, 8.)

IV. The cross-examination shows that the attesting witnesses
contradict themselves, and each other; their testimony is there-
fore shaken, and·they alone proved the will. In a case preg-
nant with the appearance of fraud, and resting·on the attesting
witnesses alone, these witnesses must be beyond suspicion, and
if at all shaken in credit, no part of their evidence can be
relied on. (1 *Hagg. Eccl. Rep.* 288.) Eugene Cassidy, in
whose favor the alterations are, is a legatee, a patron to an
ecclesiastical appointment, and executor and a witness to the
will. He was the conduit of the decedent's directions·to the ·
other witness who wrote the will, and in whose handwriting the
alterations were made. Knowledge of these erasures and alter-
ations, is therefore conclusive against both of the attesting wit-

McDonough *v.* Loughlin.

nesses ; yet they offer no explanation. If narratives like the present may be written at the end of a will, and signed as an attestation clause, a wide door is thrown open to the most enormous frauds, upon testators and heirs at law. The court should assert a safe general principle, irrespective of any opinion it may form as to the good or bad faith of the witnesses in the particular instance, and so give effect. to the spirit of the statute.

*A. McCue* and *H. B. Duryea*, for the respondent. I. The will of the testator is executed in the manner prescribed by the revised statutes. (2 *R. S. 3d ed. p.* 124, § 32. *Remsen* v. *Brinckerhoff*, 26 *Wend.* 325. *See* 1 *Denio*, 33.)

II. The respondent, Cassidy, was a competent witness to prove the execution of the will. (2 *R. S. 3d ed.* 125, § 42.)

III. If the legacy and devise, to the respondent Cassidy, be void, then he takes no beneficial interest or appointment under the will. The office of executor is not such a beneficial interest or appointment as is contemplated by sec. 42, page 125, vol. 2, R. S. 3d ed. The law vests the whole personal estate in the executor. And an executor and trustee may be a witness to the will under which he takes his appointment. (*Jarmin on Wills*, 2d *Am. ed. vol.* 1, *p.* 106, *and cases therein cited. Phipps* v. *Pitcher*, 6 *Taunt.* 220. *Tucker* v. *Tucker*, 5 *Iredell*, 161. *Valentine* v. *Jackson*, 9 *Wend.* 302. *Babcock* v. *Booth*, 2 *Hill*, 181. 1 *W. Black.* 325. 1 *Douglass*, 139. 12 *East*, 250.)

The decree of the surrogate should be affirmed.

*By the Court*, S. B. STRONG, J. The statute would have made the respondent Cassidy a competent witness to prove the execution of the will, even if he would have otherwise been excluded by the rules of the common law. (2 *R. S.* 65, § 50.) The only objection, of any weight, to his admissibility was that he was the applicant to establish the will, and therefore responsible for the costs, in the event of a failure. That objection not having been raised before the surrogate, it must be deemed to have been waived, and can be of no avail on an

appeal. (*Leach* v. *Kelsey,* 7 *Barb.* 466. 1 *Cowen & Hill's Notes,* 256, 266.)

I can see no valid objection to the manner in which the witnesses to the execution of the will subscribed their names. The legislature undoubtedly intended that the certificate of attestation should intervene between the body of the will and the names signed by the witnesses. The memorandum of the erasures and interlineations is merely a part of the certificate. Taken together, it states that the paper *as altered,* was executed by the testator and attested by the witnesses. That, so far as I know, is, and was before the adoption of the revised statutes, the usual practice where there are alterations to the will as at first drawn, and it seems to me is free from objection, and very proper. The alterations in the will in question are quite numerous, and the memorandum is consequently a long one, but that, in the absence of any charge of fraud, can make no difference.

The appellant is mistaken in point of fact in his allegation that there is no evidence to show that the decedent requested Cassidy and McCue to witness the will. Cassidy testified that the testator said to him, " Mr. McCue will want you to be a witness to the will." And McCue swore that " he read the attestation clause to the testator, and asked him whether he wished us (Cassidy and McCue being the only persons then in attendance) to be witnesses to the will, and he said that he did." It surely is not necessary that a testator should himself formally repeat the words. It is enough if he directly and audibly adopts the language of another, used in his presence and hearing. To hold otherwise would be to sacrifice substance to mere unmeaning formality.

I am strongly inclined to think that the admission and examination of Cassidy, as a witness to prove the will, did not annul his appointment of executor, or the legacies to him as a trustee. The statute avoids any beneficial devise, legacy, interest or appointment, to witnesses, (2 *R. S.* 65, § 50,) but the use of the word " beneficial," if it has any signification, indicates that there may be devises, legacies, interests and appointments

to an executor or trustee, which may be sustained, notwithstanding his examination in support of the will. The only question in this case is whether the legacies or appointment are beneficial to Cassidy. Clearly nothing is given to him, nor is any appointment conferred upon him, for his own personal use. All is fiduciary, and for the benefit of others. He will be, it is true, entitled to the commissions allowed by the statute. But that is by way of compensation for his services, and is not a gift under the will. Payment for services (and in most cases of this kind the compensation) is never considered as a gratuity. It is undoubtedly beneficial to have an employment, for a reasonable compensation, but the benefit is not of a character to disqualify a witness, and it is to such only that the statute refers. The revised statutes declare that devises in trust are not necessarily beneficial. They provide (1 *R. S.* 732, § 76) that *powers* are beneficial or in trust, and (in § 79) that a general or special power is beneficial when no person other than the grantee has, by the terms of its creation, any *interest* in its execution. These provisions are certainly antagonistical to the idea that because the donee of a mere naked power may be entitled to a compensation for his services he is therefore beneficially interested.

It has been held in South Carolina, (*Taylor* v. *Taylor,* 1 *Richardson,* 531, *and Tucker* v. *Tucker,* 5 *Iredell's Law Rep.* 161,) that the office of executor is an appointment yielding emolument, and that therefore one named as an executor in a will is an incompetent witness to establish it. And the same principle was adopted in the case of a trustee entitled to compensation, in North Carolina. (*Allison's Ex'rs* v. *Allison,* 4 *Hawks' Rep.* 141.) The same rule has been adopted by this court at a general term in the third district, (*Burritt* v. *Silliman,* 16 *Barb.* 198,) although, as stated by Judge Harris, " with hesitation." But the decisions in the English courts are the other way. (1 *Modern Rep.* 107, *before Lord Hale. Lowe* v. *Jolliffe,* 1 *W. Black.* 365. *Holt* v. *Tyrrell,* 1 *Barnard. Rep. K. B.* 12. *Bettison* v. *Bromley,* 12 *East,* 250.) In the case last cited, Lord Ellenborough said that the point

had been decided, so long ago as Lord Hale's time, that an executor having no interest in the surplus was a good witness to prove the will, in a cause concerning the estate; and this had been followed by other decisions to the same effect. I am inclined to follow the English decisions, as it seems to me they are supported by the better reason. It is true that in England the executor has not, generally, any compensation for his services; but it is taking a very narrow view of the subject to suppose that the statute allowing a meager compensation for what are too often unthankful services, can confer such a benefit as to disqualify an otherwise competent witness. The tendency of modern legislation is to relax the rules of exclusion, and I yield to the spirit of the age where those rules were merely technical, or had no substantial foundation.

The surrogate's decree must be affirmed.

[DUTCHESS GENERAL TERM, July 2, 1855. *Brown, S. B. Strong* and *Rockwell*, Justices.]