STEWART v. HARRIMAN.                    { Aug. 13, 1875.

*Probate of will—Appeal—Attestation.*

The statute of July 2, 1822, provided, that in case any will should be proved without notice to the parties interested, any party interested should be entitled to have the probate reëxamined, on petition presented to the judge of probate, &c., with this proviso : "*Provided*, that no such application shall be sustained unless preferred within one year from the time of the probate, nor if an appeal from such probate has been prosecuted before the superior court."  By Gen. Stats., ch. 175, sec. 7,—which is the same as in the Revised Statutes of 1842,—it is provided that "Any party interested may have the probate of any will which has been proved without notice reëxamined, and the will proved in solemn form before the court of probate, at any time within one year of such probate, if no appeal from such probate has been prosecuted before the supreme court."  *Held*,

that this change in the language did not change the meaning of the statute, and that the petition would be in season if filed within one year from the time of the probate in common form.

The attesting witnesses to a will must be competent at the time of attestation.

The executor named in the will, as also his wife, is a competent attesting witness, if he takes no beneficial interest under it.

The fees and commissions to which an executor is by law entitled in this state, do not constitute such a beneficial interest as to render him or his wife incompetent to attest the execution of a will.

From the Merrimack Probate Court.

For the purpose of raising certain questions of law only, the following facts were agreed, viz.,—This case is an appeal from the decree of the judge of probate of said county of Merrimack, proving and approving a certain paper as the last will of Francis Davis, late of Warner, in said county, deceased. The said testator died on August 3, 1872, and said instrument was proved in common form as the last will of said Francis Davis, at a probate court, held in and for said county, at Concord, August 27, 1872.

A petition, bearing date August 9, 1873, of Judith H. Stewart, the only child and sole heir-at-law of said testator, for the probate of said will in solemn form, was filed on said August 9, 1873, in the probate court of said county; and on August 12, 1873, a citation in due form of law was duly issued for a hearing on said petition, at a probate court to be holden at Concord, on the fourth Tuesday of September, 1873.

At the hearing upon said petition, counsel for the executor appeared specially, and objected to the probate in solemn form, for the reason that more than one year had elapsed since the probate of the same in common form, and that the validity of said will could not now be questioned. Said instrument was approved and allowed, by said court, as the last will of said Francis Davis. One of the three attesting witnesses of said instrument was Mary A. Harriman, who was, at the date of the execution thereof, and now is, the wife of said Henry H. Harriman, who wrote said instrument, and who is named therein as executor, and who has accepted said office and trusts, and has been duly appointed and qualified in respect thereto, and was, at the date of such probate in solemn form, and is, acting in such capacities. A copy of said instrument, purporting to be the said last will of said testator, is made a part of this case, and may be referred to in the argument.

The said Judith H. Stewart was, on August 27, 1872, has since that date been, and now is, a married woman, that is to say, the wife of Leonard Stewart of said Warner.

*Hawthorne & . Greene, Mugridge,* and *Tappan,* for the appellant.

*Eastman, Page & Albin* (with whom were *Sargent & Chase*), for the appellee.

CUSHING, C. J. It is contended by the appellee, that the change in the words of the statute of 1822 by the Revised Statutes of 1842, has changed the construction, so that now the whole proceedings, on the petition to prove in solemn form, must be completed within one year from the date of the proof in common form.

This construction of the statute would render the period of limitation for probate, in solemn form, ambulatory, and depending not upon the diligence of the party in claiming his right, but on his good luck in getting through his litigation in one year. When we consider how few contested probates are ever completed in one year, especially considering the right of appeal and the time ordinarily consumed in such appeals, it seems as if the mere statement of the consequences would be enough to show the construction untenable. It is well enough settled in New Hampshire, that, on a revision of a law, " the mere change of phraseology shall not be deemed a change of the law, unless such phraseology evidently purports an intention of the legislature to work a change." *Jewell* v. *Holderness*, 41 N. H. 161. I have, therefore, no difficulty in holding that it is sufficient if the petition for probate in solemn form be filed within one year from the date of the probate in common form.

The second question is, whether the wife of the executor named in the will was a competent witness.

By Gen. Stats., ch. 209, removing disabilities of witnesses by reason of interest, as parties or otherwise, it is enacted, sec. 23, as follows, viz.,—" The provisions of this chapter shall not affect the law relative to the attestation of wills or other instruments required to be attested by subscribing witnesses."

It is well settled that the witnesses must be competent at the time of attestation. *Hindson* v. *Kersey*, cited 1 Redf. on Wills 253; *Hawes* v. *Humphrey*, 9 Pick. 350; *Haven* v. *Hilliard*, 23 Pick. 10; *Carlton* v. *Carlton*, 40 N. H. 14; 1 Redf. on Wills 255, and cases cited; 2 Vesey, Jr., 636, ROSLYN, L. C.; *Anstey* v. *Dowsing*, 2 Stra. 1253.

In the case of *Lowe* v. *Jolliffe*, a most spirited and graphic account of which is given by Sir William Blackstone—1 Wm. Blackstone 365— Mr. Dovey, being executor in trust under the will by which a legacy of two hundred pounds had been given him for his trouble, was admitted to testify on his releasing his legacy. Mr. Dovey was not an attesting witness, but at that time, when any pecuniary interest would have excluded him from testifying, as well as from attesting the will, it was held that he must release his legacy, and that then he would be competent. I believe that the law is now universally held, that the person named as executor in the will is competent if he takes no pecuniary interest under it.

The only question which remains, then, is, whether the executor's right to the ordinary fees and commissions, under the laws of this state, con-

stitutes such a beneficial interest as to render him incompetent. My brethren have reached the conclusion that they do not, and, although I cannot agree with them, I acknowledge that the preponderance of authority out of the state is that way. I am not aware of any benefit which could result from any discussion by me.

The result is, therefore, that the executor under this will takes no beneficial interest such as to render him incompetent, and that therefore his wife was a good attesting witness.

LADD, J. I agree with the chief justice, that the right of Judith H. Stewart to have the will proved in solemn form was not lost by the lapse of time, and do not wish to add anything to the reasons he has given for that conclusion.

The second question in the case is, Was Mary A. Harriman, wife of the executor, Henry H. Harriman, a "credible witness" within the meaning of the statute, at the time of the execution of the will? It is conceded that this depends upon whether her husband was disqualified to be a subscribing witness, by the fact that he was therein named as executor. This question has, therefore, been most elaborately discussed by counsel, who have called our attention to a great number of cases, both English and American, bearing more or less directly upon it. As to the English authorities, they seem to be uniform, that an executor, who takes no beneficial interest under the will, is a good attesting witness. *Phipps* v. *Pitcher*, 6 Taunt. 220 ; *Bettison* v. *Bromley*, 12 East 250 ; *Goodtitle* v. *Welford*, Doug. 139 ;—and see *Lowe* v. *Jolliffe*, 1 Wm. Bl. 365. It is said, however, by counsel for the appellant, that these cases may stand well enough, because in England the office of executor is simply a burdensome trust, for the performance of which no compensation is allowed ; but that where, as in this state, a commission on moneys coming to the hands of the executor by way of remuneration for his services, and for the care, trouble, and risk not otherwise compensated (*Gordon* v. *West*, 8 N. H. 444), he takes such a direct interest under the will as disqualifies him to be a subscribing witness.

The question is, Was the witness incompetent by reason of interest at the time of attesting the will? Gen. Stats., ch. 175, sec. 12 ;—and see 1 Redf. on Wills 253, n. 1. It seems to me this question is determined in the negative by the plainest application of the rule with respect to disqualifying interest, as laid down in all the books and cases. That rule, as given by Professor Greenleaf, is,—It must be a present, certain, and vested interest, and not an interest uncertain, remote, or contingent. 1 Gr. Ev., sec. 390. That this has always been recognized in this state as a correct statement of the rule is abundantly shown by the numerous cases in our reports, where it was discussed and applied before the statutes removing the disqualification of interest. Mor. Dig., tit. Interest, p. 641, *et seq.*

Which one of the requirements of this rule is met by the fact, that, if the testator does not revoke his will, nor make another, nor nominate

another executor, and the executor lives, and accepts the trust, and is duly appointed to administer by the probate court, and actually enters upon the administration, he will be entitled to commissions?

Was the interest a present interest at the time of the attestation? The answer to this is found in the fact, that the will does not take effect till the death of the testator. Was it certain? The answer to this is found in the fact, that if the executor died before the testator, there is nothing which he has taken by the will that will go to his heir or administrator, or that he can himself dispose of by will. It is inconceivable to me upon what ground, or in what proper sense of the term, an interest can be called vested, which may be recalled and obliterated by him who has created it at any moment after its creation, and before the possibility of its possession and enjoyment has ever arisen. A thing like this, so evanescent and uncertain as almost to elude the keenest legal optics, seems hardly entitled to be called an interest at all, much less a vested interest. The word "vest" is defined, "to give an immediate, fixed right of present or future enjoyment." Bouv. L. Dic. A vested interest can mean nothing else than an interest in respect of which there is a fixed right of present or future enjoyment. The power of a testator over his will to destroy it, make a new one, or appoint another executor, certainly seems to leave narrow ground for the contention that the interest of the executor therein named is a vested interest.

In *Smith* v. *Blackham*, 1 Salk. 283, TREBY, C. J., held that "an heir apparent may be a witness concerning the title of the land, but a remainder man cannot, for he hath a present estate in the land; but the heirship of the heir is a mere contingency." This seems to be going about as far as to hold that an executor, to whom a beneficial interest is given by the will, may be an attesting witness. There is no fixed present right in either case, and the contingency as to future enjoyment is to all appearance as great in the case of a legatee or devisee before the death of the testator, as in case of an heir apparent before the death of the ancestor. But I have not seen the doctrine anywhere questioned, and Mr. Greenleaf quotes it as good law. 1 Gr. Ev., sec. 390. This case was in 1699. Nearly a hundred years later, in the case of *Bent* v. *Baker*, 3 Term 27, Lord KENYON has some observations on the subject, which I quote. He says,—"I premise, with mentioning what was said by Lord MANSFIELD *( Walton* v. *Shelley,* 1 Term 300) on this subject, that ' the old cases, upon the competency of witnesses, have gone upon very subtle grounds. But of late years the courts have endeavored, as far as possible consistent with those authorities, to let the objection go to the *credit* rather than to the *competency* of a witness;' and if the opinion of so great a judge stood in need of any support, it would have it from the sentiments of Lord HARDWICKE, in the case of *King* v. *Bray* (Rep. Temp., Hard., 360), who said, that "whenever a question of this sort arose on which a doubt might be raised, he was always inclined to restrain it to the credit rather than to the competency of the witness, making such observations to the

jury as the nature of the case should require. Now, fortified with two such authorities as these, I have no scruples in declaring my concurrence that, wherever there are not any positive rules of law against it, it is better to receive the evidence of the witness, making, nevertheless, such observations on the credit of the party as his situation requires." But in the case which we are considering, after the lapse of almost another century, when the policy of the law has become fixed and unmistakable in the direction of admitting rather than excluding light, I think it is quite unnecessary to invoke even the sensible doctrine thus emphatically announced by HARDWICKE, MANSFIELD, and KENYON; for in none of the oldest cases have I found a witness excluded for interest upon a ground sufficiently subtle to warrant us in holding this witness incompetent.

*Richardson* v. *Richardson*, 35 Vt. 238, is exactly in point, and I do not see how a different position can be held without overturning such cases as *Sears* v. *Dillingham*, 12 Mass. 358, *Comstock* v. *Hadlyme*, 8. Conn. 254, and a multitude of others, decided by American courts, which Judge Redfield (1 Redf. on Wills 258, n. 12) cites in support of his own statement, that "the proposition of the competency of an executor to be one of the witnesses of the will seems to be well settled in the American states."

I have thus far placed my opinion upon the sole ground that the right of the executor, named in the will, to administer the testator's estate, and so to receive commissions, was not a present, certain, and vested interest, such as to render him, or, what amounts to the same thing, his wife, incompetent. But even admitting that this is not so,— that his right was then certain and fixed,—the appellant has still a further objection, to overcome which seems to me extremely formidable, to say the least; — Did that right constitute an interest of such character as to disqualify? Upon this point, POLAND, C. J., in *Richardson* v. *Richardson, supra*, says,—" But if it be regarded as settled at the time that he is to be executor, the only interest he can be said to acquire is to perform a service, for which he is to receive a bare compensation just in proportion to the service performed. This can hardly be regarded as a legal interest, by any rule that has ever been recognized in the law. If a fixed per cent. were given by law, irrespective of the actual services performed, it would be quite a different case." To my mind that is conclusive. But whether it be so regarded or not, it is certainly sufficient to raise a very grave doubt, and such a doubt as makes it the duty of the court to apply the doctrine of the great English judges already quoted, and admit the witness, weighing the fact of inclination or bias which may be thus created in her mind, for whatever it may be worth, against her credit.

SMITH, J. It would be little less than absurd to hold that a petition for the reëxamination of the probate of a will must not only be filed, but that a hearing or trial thereon should be had, and a decree or judgment rendered, all within the space of one year from the probate of the

will. Such a result could not ordinarily be reached by the use even of the utmost diligence. If the legislature intended such a construction should be put upon the statute—Gen. Stats., ch. 175, sec. 7—they have failed to say so, and too serious consequences are involved to warrant us in holding that such intent is to be inferred from the language used.

The other question raised is, whether the wife of a person named as executor is a credible attesting witness to the execution of a will. This question, so far as I am aware, is presented here for the first time. I have examined, so far as I have had opportunity, the decisions of other states, and, with the exceptions of the courts in North and South Carolina, the authorities are uniform that the executor, not otherwise interested in a will, is a competent attesting witness.

In *Bettison* v. *Bromley*, 12 East 250, the wife of an executor, taking no beneficial interest under the will, was held to be a competent attesting witness to prove the execution of it, within the description of a credible witness in the statute of frauds (29 Car. 2, ch. 3, sec. 5). Lord ELLENBOROUGH, C. J., said,—" The point had been decided so long ago as Lord HALE's time, that an executor having no interest in the surplus was a good witness to prove the will in a cause concerning the estate, and this had been followed by other decisions to the same effect." So, in *Phipps* v. *Pitcher*, 6 Taunt. 220, an executor, clothed with a trust to pay debts, and to lay out money for the benefit of the testator's children, and with power to sell lands, but taking no beneficial interest in the will, was held to be a good attesting witness to the will.

Of the American cases, in *Snyder* v. *Bull*, 17 Pa. St. 58, is an able opinion by GIBSON, C. J., where the executor was held to be a competent subscribing witness. He said,—" Granting for the moment that the office of an executor is a beneficial one, he was not an executor, though nominated, for no man living has an executor; but he might, eventually, be one. True: but he might not. He might die in the lifetime of the testator, or his nomination might be revoked, or he might not find it convenient to accept. He may have had the executorship in prospect; but a contingent interest does not disqualify a witness at the time of deposing, or for an equal reason at the time of attesting. Had he renounced, he might have been sworn; yet his renunciation would not have been a release of an immediate interest. But, in contemplation of law, an executorship is not an office of profit. In England, the services are gratuitous, and, though they are paid for here, the design of the allowance is compensation. It is sometimes more, and seldom less; but the executor is supposed to get nothing that he has not earned, and if he sometimes gets too much, it is the fault of the court, and not of the law. * * Now, on no rule of evidence can the expectation of a fat job go to more than credibility; and interest which goes to competency is fixed and certain."

This point is decided the same way in Maine, in *Jones* v. *Larrabee*, 47 Me. 474, *Patten* v. *Tallman*, 27 Me. 17, *Warren* v. *Baxter*, 48 Me. 193;

also, in Massachusetts, in *Sears* v. *Dillingham*, 12 Mass. 358, *Wyman* v. *Symmes*, 10 Allen 153; also, in Connecticut, in *Comstock* v. *Hadlyme*, 8 Conn. 254; also, in New York, in *McDonough* v. *Laughlin*, 20 Barb. 238. To the same effect are *Dew* v. *Allen*, 1 Penning. (N. J.) 35, *Coalter* v. *Bryan*, 1 Grat. (Va.) 18, *Perolta* v. *Castro*, 6 Cal. 354, *Orndorff* v. *Hummer*, 12 B. Monroe (Ky.) 619, and *Meyer* v. *Meyer*, 7 Fla. 292.

In *Richardson* v. *Richardson*, it was said the only interest the executor can be said to acquire is, to perform a service for which he is to receive a bare compensation, just in proportion to the service performed.

In *Meyer* v. *Meyer*, Chief Justice BELTZELL says a contra construction " would disqualify not only the executor but all others rendering services to the estate. The judge of probate himself is allowed a compensation for his services in taking probate of the will : why is he not incompetent ? In like manner the sheriff, appraisers of the estate, the auctioneer, mechanic, merchant, and lawyers rendering service, are entitled to compensation : why are they not also disqualified and incompetent witnesses ? "

In *McDonough* v. *Laughlin*, *supra*, one Cassidy, a subscribing witness, was named as executor and residuary legatee in trust. S. B. STRONG, J., said,—" It is undoubtedly beneficial to have an employment for a reasonable compensation, but the benefit is not of a character to disqualify a witness; and it is to such only that the statute refers. * * I am inclined to follow the English decisions, as it seems to me they are supported by the better reason. It is true, that in England the executor has not generally any compensation for his services ; but it is taking a very narrow view of the subject to suppose that the statute allowing a meagre compensation for what are too often unthankful services, can confer such a benefit as to disqualify an otherwise competent witness. The tendency of modern legislation is to relax the rules of exclusion, and I yield to the spirit of the age where those rules were merely technical or had no substantial foundation." This decision clearly overrules *Burritt* v. *Silliman*, 16 Barb. 198, where the conclusion was reached by the court, as stated by HARRIS, J., " with some hesitation."

In seeming conflict with the foregoing decisions is *Tucker* v. *Tucker*, 5 Ired. (N. C.) 161, where the executor was held to be an interested witness, " because the act of 1799 gave an executor a legal right *over and above* his charges and disbursements to commissions on the personal estate."

In *Huse* v. *McConnell*, 2 Jones's Law (N. C.) 455, the court remark, —" It is well settled that an attesting witness to a will must be competent at the time of attestation, and that no subsequent release, where the objection is one of interest, can restore competency. The leading case in this state is *Allison* v. *Allison*, 4 Hawks 141. This was followed by the case of *Tucker* v. *Tucker*, 5 Ired. 161, in which the case of Allison is cited and approved, and in *Morton* v. *Ingram*, 11 Ired. 368. Both those cases are referred to as correctly decided, that the right

to commissions which an executor under our statute has is such an interest as disqualifies a witness, and that a release does not remove the disqualification.

In the case of *Huse* v. *McConnell*, the wife of the person named as executor was one of the subscribing witnesses; and the case would be directly in point here, if it is authority in this state.

The decision in these North Carolina cases turned upon the peculiar provisions of their statutes, which gave the executor commissions *over and above* his charges and disbursements. In *Allison* v. *Allison* the court say that *the right to commissions* is such an interest as disqualifies a witness, and that the executor *has a right by law* to commissions. These decisions are thus clearly distinguishable from the authorities of other states above cited, where commissions are allowed, not by virtue of some peremptory statute as perquisites, but, as in this state, as compensation for services. *Gordon* v. *West*, 8 N. H. 444; *Lucy* v. *Lucy*, 55 N. H. 9.

In *Taylor* v. *Taylor*, 1 Rich. (S. C.) 531, an executor was held to be an incompetent attesting witness to a will of personal property, under the act of 1824; but the decision was by a divided court, and several of the judges delivered very able dissenting opinions.

It appears, then, that the decisions in this country uniformly support the doctrine that the executor, not otherwise interested in the will, is a competent attesting witness, except the cases above cited from the Carolinas, which would seem to stand upon exceptional grounds. In the face of authorities so numerous, and concurred in by courts eminent for the ability of their judges, I should hesitate to dissent, even though there might be doubt as to the soundness of the principle upon which their decisions rest; but I think it has been clearly shown that there is no well grounded objection to the competency of an executor as an attesting witness to a will on the score of interest in the compensation to which he is entitled for services rendered, and the principle ought not at this day to be questioned. The policy of legislation of late years has been to relax the strictness of the rules excluding testimony on the ground of interest, and to admit such witnesses as may be available, leaving the question of credibility to be weighed with the evidence. Disabilities have been removed from parties in civil suits, from prisoners in criminal prosecutions, and from persons convicted of crime, until scarcely an obstacle remains in the way of preventing any and every one, who can throw any light upon the issue, from testifying as to all facts within his knowledge.

To hold, therefore, that Mrs. Harriman is not a competent attesting witness to this will would, in my judgment, be taking a retrograde step in the interpretation of principles that should govern the admission of evidence in this class of cases especially, and in the trial of causes generally. We are not called upon to take any narrow views of the subject, but are rather required to so interpret the law that the intention of testators will be carried into effect, and not be defeated.

*Case discharged.*