NEW YORK COUNTY.—HON. D. C. CALVIN, SURROGATE.— May, 1877.

## REEVE *v.* CROSBY.

*In the matter of the probate of the last will and testament of ANNA M. DENNIS, deceased.*

On the probate of a will, the testimony of persons other than the subscribing witnesses, may be adduced to prove its due execution, although the subscribing witnesses are neither dead nor non-resident nor insane.

A person named as executor in a will, is not a party to the probate of the will so as to exclude him (under § 399 of the Code of Procedure) from testifying to personal transactions and communications between himself and the deceased in regard to the execution of the will.

The fact that an executor is entitled to commissions for his services as such, does not make him a beneficiary under the will, and he is not therefore such a person interested in the event of the application for probate of the will, as is a legatee or devisee, so as to make him a party to the proceedings within § 399 of the Code of Procedure.

And even though by the will the person named as executor is given a fixed sum (in addition to what he may become entitled to as commissions) for his services "in taking care of and settling the estate," this does not make him interested in the event of the probate proceedings as a legatee under the will, since he is to render services for the sum given him.

Even did this make him a party to the proceedings, a release to the estate of his claim to the sum given him by the will, would remove his interest, and make him uninterested, and allow him to testify free from the restrictions of § 399 of the Code.

*It seems* that a legatee under a will, who is not a subscribing witness to it, but who was present when it was executed, may give evidence on the probate of the will, of what he saw the testator do at the time of signing it, and what he heard him say to the subscribing witnesses; that such matters are not personal transactions or communications between the witness and the deceased.

*It seems that* such a witness may (*e. g.*) testify that he asked the testator if he declared the instrument he had signed to be his last will and testament, and that he answered "yes."

Where testimony on the probate of a will has been commenced before a surrogate, and his term of office expires, or he dies before the testimony is completed, his successor in office need not take the testimony *de novo*, but under the power to complete unfinished business, conferred by 2 R. S. 223 § 11, (which provides that "upon the office of any surrogate becoming vacant, his successor shall have power and authority to complete any business that may have been begun or that was pending before such Surrogate") he may complete the taking of the testimony and consider it in connection with what was taken before his predecessor in office, and upon the testimony taken before his predecessor and that taken before himself, he may reject or admit the will to probate.

It is not necessary that a testatrix should; in so many words, declare the instrument to be her will, but if she is asked if she does declare it to be such will, and answers in the affirmative, this is sufficient.

The fact that the draftsman of a will takes a legacy under it, is suspicious only in connection with other circumstances indicative of fraud, and where the draftsman and legatee was a lawyer of high professional standing, who released his legacy to the estate upon the admission of the will to probate being contested, *Held* that there was no ground for regarding his testimony in regard to the execution of the will with suspicion.

THIS was a proceeding for the probate of the last will and testament of Anna M. Dennis, deceased.

The testatrix executed her will, bearing date April 1, 1873, which was witnessed by J. W. Stronach and Annie Kirk. Under date of November 18, 1874, she executed a codicil witnessed by Dr. Stronach and William B. Crosby, Esq., and on the 6th day of July,

1875, she executed another codicil, by which she revoked the first, and which was witnessed by Mary Kirk and Ann J. Kirk. Thomas A. Reeve, a nephew of the decedent, contested the probate of the said will and second codicil. By the will, among other things, John P. Crosby, Esq., was appointed sole executor, and he was directed to retain out of the estate $500 for his services in taking care of and settling the estate, in addition to the fees to which he would be entitled as executor.

THOS. S. WOLF, *for the contestant.*

FORDHAM MORRIS, *for the proponent.*

THE SURROGATE. — The testimony was commenced before the late Surrogate, which was suspended on the executor, Mr. Crosby, being offered as a witness for the probate, on the objection of the contestant's counsel that he was a legatee under the will, and an executor, and therefore not competent as a witness, though he had executed and delivered a release of all his interest in the estate, and it was urged by the contestant's counsel that it was not competent to give evidence of the execution of the will by any other witnesses than the subscribing witnesses.

These questions were considered and passed upon by me before the further progress of the probate proceeding, but, for the purpose of clearness and completeness in the determination of the various questions involved in this case, I shall, in this final determination, consider them in their order.

I entertain no doubt that evidence to support the due execution of the will, other than that given by

the subscribing witnesses, may be adduced, though the subscribing witnesses are neither dead, non-resident, or insane. (Trustees of the Theological Seminary *v.* Calhoun, 25 *N. Y.*, 422 ; Peebles *v.* Case, 2 *Bradf.*, 226.) It seems to me equally clear that the mere fact of Mr. Crosby being an executor, does not exclude him as a witness. (McDougal *v.* Laughlin, 20 *Barb.*, 238.) In that case it was held that an executor and trustee, having, as a witness, proved the will, did not thereby forfeit his appointment as executor, or the legacies given to him as trustee, and in further commenting upon the case, the court says : " The only question in this case is whether the legacies or appointment is beneficial to Cassidy [the executor or trustee]. Clearly, nothing is given to him, nor is any appointment conferred upon him for his own personal use ; all is fiduciary for the benefit of others ; he will be, it is true, entitled to the commissions allowed by statute, but that is by way of composition for his services, and not a gift under the will. Payment for services is never considered as a gratuity ; it is undoubtedly beneficial to him — an employment for a reasonable compensation — but the benefit is not of a character to disqualify the witness, and it is to such only that the statute refers."

The *Revised Statutes* declare that devises in trust are not necessarily beneficial. (1 *Rev. Stat.*, 682, § 79.) They define a beneficial, general, or special power to be when no person, other than the grantee, has, by the terms of its creation, any interest in its execution. It is apparent, therefore, that Mr. Crosby, because he is executor, cannot be held to be beneficially interested.

The next question which has been discussed, and

requiring determination, is whether the gift to Mr. Crosby of $500, "for his services in taking care of and settling the estate," in addition to the ordinary fees to which he would be entitled as executor, constitutes him an interested party in the probate of the will, so as to exclude him as a witness to "any communication or transaction." As that sum is given as additional compensation to the executor, it partakes of the same character as a commission provided by statute, and I am of the opinion that, under the authority of McDonough v. Laughlin (above cited), Mr. Crosby had not such a beneficial interest as to exclude him as a witness, if he had not executed the release, but it is quite clear that if it were otherwise, the release obviated the objection.

I am, however, desired by the respective counsel to consider the question as though the sum given to the executor were clearly a bequest in the ordinary signification of the term, and as though no release had been executed.

Section 399 of the Code of Procedure does not, in my opinion, exclude the testimony of Mr. Crosby, though he is, in the ordinary sense, a party to the proceedings and interested in the amount thereof. The proof sought to be made by the witness, as to the proper execution of the instrument, does not fall within the prohibition of that section, for it cannot be truly said that the act of execution and publication of the instrument, and the testator's request to the witness to subscribe as such, were *personal transactions or communications* between the witness, Mr. Crosby, and the deceased.

The mere fact of a bequest to a witness does not, in my opinion, amount to a transaction between the testator and the legatee.   If so, a bequest to an entire stranger, who was absent at the time of the execution of the will, and who was in profound ignorance of any intention to execute a will, would make him an unconscious transactor with the testator, nor do I think that a communication by the testator with the subscribing witness, in the presence and hearing of a third party, constitutes a "communication between the witness and deceased."

It has often been held, under the section referred to, that it does not exclude a party from testifying to the particulars of transactions which took place between the deceased and another person, in the presence of the witness, who is asked to testify in respect to it.   (Lobdell v. Lobdell, 36 N. Y., 327; Simmons v. Sisson, 26 N. Y., 264.)   Under these authorities, I entertain no doubt that Mr. Crosby, although executor and legatee, is admissible as a witness to prove the execution of the will in question.

The testimony as to the execution of the will and codicils is as follows: Dr. Stronach testifies, in substance, that he saw the testatrix sign the will; that J. P. Crosby, Esq., who drew it, called the attention of the testratrix to the document, said that it was her last will and testament, and that she agreed to that, and that Miss Kirk, the other witness, he thinks was present at the time, but is not sure; that he signed his name, as a witness, in the presence of the testatrix; that Mr. Crosby, just as witness was about to sign, said to testatrix: " You acknowledge this to be your

last will and testament?" that she assented to it; that, at the execution of the first codicil, Mr. Crosby made the usual explanation, and said to her: "You acknowledge this to be your signature to the codicil to your will?" or something to that effect, and that she agreed to it; that Mr. Crosby, the other subscribing witness, was present at the time, the witness saw him sign it, as a witness, and he himself signed it in the presence of the said Mr. Crosby. On cross-examination the witness testified that he did not remember the testatrix asking him to sign the will, or that she said that it was a will, but that she said it was her signature; that the question was asked by Mr. Crosby whether she acknowledged that to be her signature to her last will, and that she answered, "Yes." That occurred after she had signed the instrument. The will was read by Mr. Crosby, but he does not remember that testatrix said the words, "This is my codicil," and he thought the attestation clause was read to him before he signed it.

Annie Kirk, the other subscribing witness, testified that she did not remember seeing the testatrix sign the paper; that Mr. Crosby requested her to sign in the presence of the testatrix and the other witness; that he asked her if she would sign it, and said that it was Mrs. Dennis's will, that it was her last will and testament, and that she desired her to sign it, as a witness, and that the testratrix assented; that she signed the second codicil in the presence of the testatrix, of Mr. Crosby, and her mother, Mary Kirk, and that the testatrix asked her if she would sign the codicil, which she declared to be a codicil to her will.

On cross-examination, she testified that she saw Doctor Stronach sign, as a witness; that Mr. Crosby read the codicil, and said it was a codicil, in the presence of the deceased, and asked her if it was her last will and testament, and that she said, "Yes;" that he used the word "codicil," and she answered, "Yes."

William B. Crosby, Esq., one of the subscribing witnesses to the first codicil, testified that he subscribed it, as a witness, in the presence of Dr. Stronach, who subscribed it in his presence; that his father, J. P. Crosby, asked the testatrix whether it was a codicil to her last will and testament, and whether she declared it to be such, and whether she requested Dr. Stronach to sign the same, as a witness; that she replied that she did; and they signed the codicil in the presence of the testatrix, and of each other, and she had already signed the codicil.

Mary Kirk, a subscribing witness to the second codicil, testified that the testatrix asked her to sign; that Mr. Crosby read the part she was to sign, which was done in the presence of the testatrix and the other subscribing witness, her daughter Annie; that she saw the testatrix sign the codicil, and they signed and subscribed, as witnesses, in her presence, and in the presence of each other.

John P. Crosby, Esq., the attorney who drew the will and codicil, and was present at their execution, and requested the attendance of the respective witnesses at the desire of the testatrix, testified that he saw her sign the will in the presence of the witnesses, who requested them to subscribe through him, they being present; that he said: "Mrs. Dennis, do you

request these parties to witness your will?" and she answered: "Yes;" that he asked her if she declared it to be her last will and testament, in the presence of all the witnesses, in the case of the will, and in the case of the codicil—whether she declared it to be a codicil to her last will, and to the last codicil—whether she declared it to be a revocation of her codicil, to all of which she said, "Yes;" that he and the witnesses were then present, and that he saw them sign in the presence of each other, and in the presence of the testatrix; that the testatrix appeared to be of perfectly sound mind at the several times when the will and codicils were executed.

The contestant moved that the probate be denied, on the ground: First, that the testimony of the subscribing witnesses, and that portion of the testimony of John P. Crosby, which was taken before the late surrogate, cannot be considered on the question of probate, and that only such testimony as has been taken before the present surrogate can be considered as testimony in the case, and that that does not show the due execution of the will; that the probate should be refused, because all the witnesses have not been examined before the present incumbent. Second, that there is no proof by the subscribing witnesses that the testatrix declared the instrument propounded as a will to be her last will and testament, in the presence of both the witnesses; that the testatrix did not subscribe or acknowledge the will in their presence, or request them to subscribe as witnesses; that Mr. Crosby being beneficially interested in the will, his testimony should be regarded with suspicion, and the

same objection is taken to the execution of the two codicils.

To hold that the proceedings must commence *de novo*, because of the decease of my predecessor, would result practically in a dangerous disturbance of the business of the surrogate at every occasion of a new incumbent, and as the office does not die or expire with an incumbent, reason would dictate that the power to continue proceedings should rest with the new incumbent; he should proceed with them from the point where they were left by the late surrogate.

But we are not left to a mere logical deduction as to such authority. The *Revised Statutes* provide that upon the office of any surrogate becoming vacant, his successor shall have the power and authority to complete any business that may have been begun, or that was pending before such surrogate, and under this statute there seems to be no doubt of the authority of the present surrogate to continue the proceedings in this matter from the point where they were left by his predecessor, and I am inclined to the opinion that it is broad enough to meet every possible exigency liable to arise in respect to the proceedings of this court, commenced by any predecessor, left unfinished, and that, so far from the statutes which have been since enacted, authorizing an incoming surrogate to sign decrees, &c., with the date of signature to such as have been made and not signed by his predecessor, resolving any uncertainties, they may serve rather to throw doubt upon the subject by limiting the authority to particular records, &c., which may be thus signed, while the general statutes, by necessary implication,

authorized the completion, by signature or otherwise, of any proceeding left incomplete by an outgoing surrogate.

As to the objection that the will and codicils have not been sufficiently proved, the only question that can arise as to the due execution, independent of the testimony of J. P. Crosby Esq., is as to the subscription of the witnesses to the will, as all the witnesses substantially agree that the will and codicils were declared to be such by the testatrix, in the presence of the several witnesses, and that the testatrix acknowledged her signature at the time, or actually signed in their presence.

There is some uncertainty on the testimony whether the testatrix, in so many words, declared the instrument to be her last will and testament, but the enquiry whether she did so declare it, was made by Mr. Crosby, and she answered in the affirmative, and it is well settled that it is not necessary for a testator to formally repeat the words; it is enough if he substantially adopts the language of another, used in his presence and hearing. (McDonald v. Loughlin. 20 *Barb.*, 238.)

Some of the witnesses seem to be uncertain in respect to some of the requirements of the statutes relating to the execution, while others clearly testify to their performance.

In Lewis v. Lewis (11 *N. Y.* 220,) it was held that the mere want of recollection on the part of the subscribing witnesses, as to the prescribed formalities, would not invalidate the instrument as a will, if it be established by other evidence that it was executed according to the statute.

As to the subscribing of the witnesses to the will, which is left in doubt by Dr. Stronach, it will be observed that Annie Kirk, a subscribing witness, testifies as follows: "He (Mr. Crosby) asked me if I would sign it; that was when he mentioned that it was a will; that it was her last will and testament;" also that Mrs. Dennis desired her to sign that will as a witness; that testatrix assented to it, and that Dr. Stronach was there at the time, and thereafter subscribed as a witness.

In Orser v. Orser (24 N. Y., 51,) it was held that a will, duly attested on its face, the signatures to which are genuine, may be admitted to probate, although none of the subscribing witnesses are able to swear, from recollection, that the formalities required by the statute were complied with, even although some of them should swear positively that they were not, if the other evidence warrants the inference that they were. In that case one of the two witnesses, who had been in the habit of drawing wills, and was familiar with the requisites essential to their due execution, and in whose handwriting the certificate was, was dead. The living witness testified that the will was not signed, or the signature thereto acknowledged, in his presence, and that it was not declared by the testator to be his will.

Under these authorities, I am quite clear that there is sufficient proof of the request of the testator to the subscribing witnesses to answer the requirements of the statute, independent of the testimony of Mr. Crosby (the counsel who drew the will and attended to its execution); but with his testimony, the proof

seems entirely clear, and there is no circumstance which could affect the credibility of Mr. Crosby in the testimony. It is true that, by the will, he takes $500 as a compensation for the performance of his duty as executor. But the fact that the draftsman of the will takes a legacy under it, is suspicious only in connection with other circumstances indicative of fraud or undue influence, and in this case there are no such suspicious circumstances, and the well known professional good name of Mr. Crosby renders it unnecessary that the question should be considered; besides, his release of his interest in the estate, obviated the objection, if it existed.

For these reasons, I held the evidence sufficient to prove the due execution of the will, denied the motion to dismiss, and additional testimony was given in the case.

[After reciting the testimony, the surrogate proceeded :]

The testimony adduced by the contestant does not show any lack of mental capacity on the part of the testatrix when she executed the instrument in question, and on that testimony alone no presumption against its validity could be, in my opinion, predicated, and it appearing that the testatrix was of sound and disposing mind at the time of the execution of the will, that it was drawn under her instruction, and was read to her, overcomes any possible presumption against it, arising from the counsel taking the legacy of $500 to himself.

The will should therefore be admitted to probate.