In the Matter of the Probate of the Will of HERMAN L. BITTERMAN, Deceased.

Surrogate's Court, New York County, December 5, 1952.

*Raphael H. Weissman* for Jacob L. Bitterman and others, for motion.

*Henry Epstein* for Robert Garlock and others, as executors of Herman L. Bitterman, deceased, opposed.

*Seymour J. Wilner,* special guardian for Christopher Broetman, an infant, opposed.

FRANKENTHALER, S. The testator was survived by his widow and four brothers. The widow is the principal beneficiary under the will. One of the brothers receives a small legacy but the others are not mentioned in the last will or in several prior testamentary instruments. Objections to probate of the will were filed by all the brothers but the objections were finally dismissed for failure to prosecute. The decree admitting the will to probate was affirmed on appeal without prejudice to contestants' right to move to open their default on good cause shown (*Matter of Bitterman,* 279 App. Div. 1061). The contestants now move for (1) vacatur of the probate decree, (2) reinstatement of their objections, and (3) a jury trial of all issues raised by the objections.

One who seeks to set aside a probate decree and to litigate the issues that had been once put to rest by that decree, must first show a substantial basis for the contest and reasonable probability of success. (*Matter of Westberg,* 254 App. Div. 320; *Matter of Callahan,* 273 App. Div. 884; *Matter of Marshall,* 260 App. Div. 874; *Matter of Lindsay,* 136 Misc. 555, 557, affd. 234 App. Div. 841.) The court heretofore directed a hearing for the submission of evidence on the two preliminary questions, namely, reasonable excuse for the default and substantial basis for the contest (*Matter of Bitterman,* N. Y. L. J., Sept. 18, 1952, p. 523, col. 1). At that hearing contestants failed to produce any evidence at all with respect to the objection that the statutory formalities for execution were not observed or the objection that the testator lacked testamentary capacity. They did not even attempt to show that these objections were well founded. The remaining objection charges both undue influence and fraud but not the slightest evidence of fraud was

submitted. There remains for consideration only the charge of undue influence, an issue on which contestants have the burden of proof. (*Matter of Martin,* 98 N. Y. 193, 196.)

The objectants contend that the widow, the attorney, one of the subscribing witnesses and a friend of the testator were guilty of exerting undue influence on him in the making of his will. In support of that charge they offered evidence designed to show that the testator and his four brothers had become "reconciled" before his death, that during his last illness the brothers were not permitted to visit the testator or to talk with him by telephone, that the testator's physical condition made him susceptible to coercion and that certain of his statements to others respecting his feelings toward the principal beneficiary were inconsistent with a voluntary decision by him to marry her. They argue that the marriage and execution of the will, both occurring eight days before the testator's death, viewed in the light of other facts, indicate coercion with respect to both the marriage and the will.

Contestants' proof dealing with the so-called reconciliation presupposes a prior rupture of friendly relations. Such indeed was the fact. It is not disputed that litigation between testator and certain of the brothers had embittered the testator toward them. Contestants' proof shows, at best, an improvement of relations after the death of another brother to the extent that the testator talked with them on the occasions when death or serious illness in the family brought the members together. Even if the testator had overcome his earlier feelings of bitterness over the litigation and antipathy to his brothers, there is no indication of any such resumption of fraternal relations as would make the brothers natural objects of his bounty. Indeed, insofar as the evidence shows, the so-called reconciliation did not draw any of them into the warmth of closer relationship. Up to the time of his death the testator apparently never sought the company of his brothers and until his last illness they evinced no greater interest in his companionship. Under the circumstances, testator's failure to make contestants beneficiaries under his will was neither unnatural nor inconsistent with his feelings toward them.

The contestants offered testimony relating to unsuccessful attempts by some of them to visit or talk with the testator by telephone. Such testimony apparently was intended to evidence an attempt by the widow and other persons charged with undue influence to exclude the testator from association with his relatives and to prevent him from consulting those nearest

to him. (Cf. *McLaughlin* v. *McDevitt,* 63 N. Y. 213, 219, and *Matter of Brunor,* 21 App. Div. 259, 265.) The evidence in this record is insufficient to support a finding that the widow or any other person charged with undue influence deliberately secluded the testator from the contestants. One of the brothers for whom the testator had a more friendly feeling visited him. The occasions when he or the other brothers failed to see the testator or talk with him, do not indicate any deliberate plan by others to isolate the testator from his family. The testimony of the attending physician (who is not charged with any part in the alleged conspiracy and whose testimony was offered by contestants) makes it clear that the refusal to permit one brother to visit the testator was the testator's own free and deliberate act. Contestants had not been accustomed to visit the testator and he had not sought advice from them. The circumstances of their prior relations and the testator's physical condition at the time they sought to communicate with him were such that their failure to see him or talk with him in the last days of his illness does not give rise to any inference of wrongdoing on the part of third persons.

Contestants offered in evidence the testimony of the subscribing witnesses, including that of testator's physician. They also presented the statement of another physician who attended him. All of this evidence shows that at the time of making the will the testator was in full possession of all his mental faculties. The effort to establish through testimony of one of the brothers and another person that the testator's mental and physical condition were such that he was not capable of making a will freely and voluntarily, was wholly unsuccessful and the proof offered was insufficient to raise any issue of fact in that respect.

Other evidence offered by contestants, even when viewed in the light most favorable to them and in conjunction with all their proof, fails to create any triable issue of fact. The contestants have not shown the slightest basis for contesting the will. They have failed completely to establish any basis sufficient to support a finding of undue influence.

The failure of the contestants to show that the proposed contest has a basis in anything other than their desire to litigate made it unnecessary for the proponents to go forward with evidence. The proponents nevertheless offered proof in support of the will and in the course of the hearing one of the executors-trustees was called as a witness on behalf of the proponents. Objection was made, under section 347 of the Civil Practice Act, as to the competency of the witness to

testify to transactions with the testator. Concededly the fact that the witness would be entitled to statutory commissions as compensation for his services as a fiduciary would not disqualify him (*Matter of Wilson,* 103 N. Y. 374). The objection was made solely because of a provision in the will authorizing the trustees to become employed by any corporation or business which may be controlled or operated by the estate and to receive compensation from such corporation or business for services rendered. The contestants urge that this testamentary provision makes the trustees persons interested in the event within the meaning of section 347 of the Civil Practice Act.

The many holdings that the right of a fiduciary to commissions does not create a disqualifying interest, within section 347 of the Civil Practice Act, draw a distinction between a testamentary benefit, which is a gratuity, and an opportunity created by a will to perform services and receive remuneration therefor on a *quantum meruit* basis. In differentiating between something donated and something earned the courts have held consistently that a fiduciary's expectancy of fair compensation for services does not render him incompetent to testify to personal transactions with his testator (*Reeve* v. *Crosby,* 3 Redf. 74; *Rugg* v. *Rugg,* 83 N. Y. 592; *McDonough* v. *Loughlin,* 20 Barb. 238; *Matter of Folts,* 71 Hun 492; *Loder* v. *Whelpley,* 111 N. Y. 239; *Matter of Benardini,* 238 App. Div. 433, affd. 263 N. Y. 627; *Matter of Wilson, supra; Matter of Behan,* 159 Misc. 337; *Matter of Faeth,* 200 Misc. 143).

In *Matter of Chase* (41 Hun 203) the court reasoned that a testamentary direction to pay compensation for the care of an invalid son fell within the rule applicable to executors. A like result was reached in *Matter of Kislyk* (164 Misc. 287), a holding that an attorney for a party to the litigation was not disqualified as a witness by reason of the fact that the amount of his fee was contingent upon the degree of his client's success in the litigation.

Here the will contains no donation to the trustees but merely affords them an opportunity to earn statutory commissions and provides a possibility of remuneration for services beyond their fiduciary duties. Under the rationale of the above-cited decisions such compensation, even if assured, would not create a disqualifying interest within section 347 of the Civil Practice Act.

It has been stated repeatedly in applying the statute that the test of a witness' competency is whether he will gain or lose by the direct legal operation and effect of the judgment and whether his interest is present, certain and vested rather than uncertain,

remote and contingent (*Laka* v. *Krystek,* 261 N. Y. 126; *Matter of McCulloch,* 263 N. Y. 408; *Matter of Manchester,* 279 App. Div. 254). A possibility or expectancy, such as a tenancy by the courtesy, has been held not to be a disqualifying interest since " Like ' the next cast of a fisherman's net, it involves a possibility but no actual or potential interest ' ". (*Albany Co. Sav. Bank* v. *McCarty,* 149 N. Y. 71, 85; see, also, *Herrmann* v. *Jorgenson,* 263 N. Y. 348 where, as in *Laka* v. *Krystek, supra, Albany Co. Sav. Bank* v. *McCarty, supra,* and *Matter of McCulloch, supra,* reference was made to the disinclination of the courts to extend the disqualifying provisions of the statute.)

The possibility that the witness in this proceeding will receive compensation beyond his statutory commissions depends upon several factors. The need for his employment must exist, the unanimous action of the trustees will be required to engage him, and, above all, he must earn the compensation to be paid him. If this possibility of employment creates an interest, it is of such an uncertain, remote and contingent nature that it does not fall within the purview of the statute.

The court rules that the witness was competent to testify to transactions with the testator.

On the hearing the contestants offered no excuse for their prior default other than that heretofore given. In view of the lack of merit in the objections it is unnecessary to discuss this phase of the case.

The motion by contestants is in all respects denied.