By the Court, Comstock, J.
The action was brought upon a promissory note for $2,500, made by one of the defendants, and indorsed by the other, at the city of Buffalo, payable in the city of New York hi seventy-live days from its date. The note was discounted at the plaintiff’s bank in Buffalo for the benefit of the maker; the other defendant having indorsed for his accommodation. The defendants, in their answer, set forth and they offered to prove on the trial that, when the note was discounted, the exchange between the cities of New York and Buffalo was, and had been for a long time previous, one-half of one per cent in favor of the former place, and that both the parties expected and believed it would continue so to be until the maturity of the obligation; that both the maker and indorser resided at Buffalo; that they had no funds or business in New York; that they had no expectation of funds there to meet the note when due, except as they should provide the same at Buffalo for the particular purpose of paying the note; that these facts were known to the plaintiff’s bank; and, finally, that the transaction was entered into with the design and for the purpose, entertained by both parties, of enabling the bank to realize, in addition to the legal rate of discount, the one-half per cent exchange on the sum of $2,500. I have stated the allegations and the offer of proof, according to their substance and effect; and I am of opinion that if usury can be predicated of any obligation to pay money, made at one place and payable at another, both within this State, on account or by reason of the rate of exchange between the two places, the evidence should have been received; and if the facts had been proved according to the offer, then that the jury should have been directed to find their verdict for the defendants. The question, therefore, is, whether usury can be alleged in respect to such contracts.
A brief consideration of the subjects of exchange and reexchange, and of the damages to be recovered by suit at law on the dishonor of bills and notes, will, in the first place, be proper. In regard to bills of exchange, the undertaking of every drawer and indorser is, that the bill shall be paid at the time *136 and place of payment; and if it be not, the holder is entitled to indemnity for the loss arising from this breach of contract. This undertaking, and the rates of exchange which occur between different States and countries, are the foundation of a rule, adopted by commercial nations, that the holder of a foreign bill is entitled, upon its dishonor, to recover against the drawer and indorser a sum in damages which, in addition to interest and expenses, will cover the amount of exchange, according to the rate prevailing for the time being. The holder of such a bill, as soon as it is dishonored, has a right, by the law merchant, to draw, at the place where it ought to have been paid, a new bill upon the original drawer or indorser in the’ country where the first bill originated; and the redraft may be for such ah amount as will afford a perfect indemnity. If the rate of exchange is against the place where the first bill was drawn, the redraft drawn at the place where it was payable will, of course, be at a discount, and the exchange must therefore be included in order that the redraft may produce, by immediate negotiation, at the current rate, the sum required to make the indemnity complete. It is not essential that the holder of the protested bill should actually redraw upon the parties residing in the country from which it came. He has the right to do so, including the reexchange; and this determines the measure of damages due to him, although the account may be left for future adjustment or litigation. These are general principles of commercial law in reference to foreign bills; although in this country, or, at least, in many of the States of the Union, they are modified by local regulation or positive statute, substituting a fixed per centum of damage in place of the uncertain measure resulting from the fluctuations of trade and exchange. (3 Kent's Com., 116, 117; Story on Bills, §§ 399-404; Scdg. on Damagest 243, 244, and cases cited in those authorities; 1 R. S., 770, §§ 18, 19.)
It can scarcely be said, however, that these doctrines form a part of the law merchant in regard to promissory notes and commercial balances of account, although due and payable .in a State or country different from that where the debtor *137 resides, and where the obligation is sought "to be enforced. On the contrary, in this State, and in Massachusetts, it has been distinctly held, that such debts are to be paid according to the par of exchange, and that the creditor is not entitled to any compensation for the difference of exchange between the country where the suit is brought and the country where the debt was payable. (Martin v. Franklin, 4 John., 124; Scofield v. Day, 20 id., 102; Adams v. Cordis, 8 Pick., 260.) The opposite doctrine was, however, held, in the Federal Circuit Courts, by Justices Stoby and Washington. (2 Wash. C. C., 168; 3 Sumn., 523.) Without attempting to decide between these conflicting authorities, there can be no hesitation in saying that indemnity for the loss of exchange is, in justice, as much due upon a note or balance of account payable in a foreign country, as upon a bill of exchange of the like character.
This particular point need not be determined, because whatever may be the rule in regard to notes and balances due out of the State or sovereignty where the debtor resides, there is no such question in reference to inland or domestic obligations of any description. In respect to these there is not the slightest trace in the commercial law of any rule which allows to the creditor more than the face of his debt, at the par of exchange, with interest and the expenses of protest, &c. Whether it be a bill of exchange,' a promissory" note, or any other form of obligation, the rule of damages is the same, excluding from consideration in all cases the rate or difference of exchange between places in the same State. This distinction between foreign and.domestic bills, extending also, according to some authorities, to promissory notes and other debts, is founded on a difference in the circumstances. The exchange between different countries is affected by the comparative weight and purity of the coin in each. It is also liable to sudden and considerable fluctuations, in consequence of the revulsions in foreign trade and commerce; and it is more or less influenced by political and other events, which can have little or no effect upon the course of trade and exchange between different points *138 within .the,same sovereignty. The law merchant, therefore, in adjusting the. rights and obligations of parties to foreign bills,. ' takes .notice of the prevailing rate of exchange, and allows it to be estimated as a part of the indemnity which is due for the non-performance. of the contract. But the-same causes do not operate upon the internal commerce of a State. ■ The standards of currency are the same at all places within its boundaries intercourse and trade are uninterrupted, and a single jurisprudence pervades every part of it. It is true that slight irregularities in trade will occur, and that a small rate of. exchange may arise, in the course of dealing, between different places. ..But these are facts unacknowledged in the system of commercial law. They suggest no principle, and they have never, afforded the foundation for a legal conclusion.
. In the light of these principles, the question of usury involved in the present -case is capable, I think, of a clear and satisfactory determination. The note in controversy was made and indorsed by residents of this State, and was payable within this State. It was strictly an inland, or domestic obligation. If the note had been paid at maturity in the city of New York, and the .rate of exchange had continued to be one-half of one ■per cent in favor of that place, the bank at Buffalo, which discounted and still owned it, would have realized an advantage to that extent, because the fund in New York could have been sold at Buffalo, by a draft- thereon, at a corresponding premium. Such would have been the practical result, if the maker of the note had paid it at the place specified, .when, it became due. But there is nothing in the law of the contract which secured that result, because the rule of damages, in an action brought upon the dishonor of the note, allows no indemnity for the loss of exchange. The extent of the obligation is to be ascertained according to that rule only. The law knows no- other mode of ascertaining it. At any time after the protest , of the note, the maker could tender to his creditor 'at Buffalo the sum.expressed in it, with interest, and the usual expenses, -in full discharge of the contract. The holder could demand nothing in addition for his loss in- not having the funds *139 placed to Ms credit in the city of Mew York, where they would have been worth to him one-half of one per cent more. Indeed, the very judgment now appealed from, in determining the validity of the contract, has truly ascertained and declared its interpretation and effect to be, that the defendants are liable for the sum loaned, with lawful interest, and no more.
This construction of the contract, which is, confessedly, the true one, can only be founded on the proposition that a given sum of money is of the same legal or theoretical value in all parts of this State. By the Constitution of the TJMted States, gold and silver only can be lawfully tendered in payment of debts; and as the same amount of coin will discharge the debt everywhere, the judgment of the law must be, that it is everywhere of the same value, although, in actual dealing, a rate of exchange may occur between different places. And if the law will not discriminate between the values at one place or another, in constrmng the contract, it seems to me a plain conclusion, that it cannot thus make the discrimination for the purpose of avoiding the contract altogether. A promissory note may be given for money lent or for goods purchased, payable at a place within the State to which the rate of exchange is favorable. In either case, the construction and effect of the instrument are the same. The measure of damages, and the legal extent of the obligation, are the face of the note and lawful interest. In the one case, no question of usury can arise, because there is no loan of money. In the other, there is no usury, because, in judgment of law, there is no agreement to pay more than the legal interest.
These conclusions may appear still more evident when we consider that a debtor, wherever he may reside within the State, can be compelled to pay the debt at the par of exchange in any city or county of the State where he may happen to have real or personal estate. The judgments of the courts for the recovery of debts are of the same force and effect everywhere, and execution may go to any county where property can be found. Thus, in this very case, the debtors may have real or personal estate in the city of Mew York liable to execu *140 tion, and such might be the fact, even if the note had been payable at Buffalo; so that a legal process executed upon property in the city, would give to the creditor all the advantage of exchange, although no such advantage was contemplated in the contract. Indeed, the contract may be strictly a Buffalo or an Ogdensburgh contract, because made and payable there, and yet, at its maturity, both parties may reside in New York. In case of non-performance the law will make the satisfaction in New York, without regard to the higher value of money in that place. On the other hand the contract may be, as in this case, a New York contract, but if enforced by legal process in Brie or St. Lawrence counties, the satisfaction will be complete, although made in money depreciated for the time being by the course of trade and exchange. Again, the debt may be one for which the person of the debtor can be taken in execution, and if so he can be arrested wherever, within the borders of the State, he may be found. In ascertaining the sum required to be paid in order to entitle him to a discharge, no reckoning can be made of the rate of exchange, whether for or against the place where he is imprisoned. The same amount of legal currency will set him at liberty in every part of the State. So, again, the contract may specify no place of payment. In such a case a tender of the debt must be made to the creditor, wherever he may reside. If he reside at the place in favor of which there is a rate of exchange, the tender must, nevertheless, be made at the par value of the currency tendered.
These and other similar illustrations which might be suggested, tend, I think, greatly to strengthen the conclusion that the law does not, for any purpose affecting the construction or validity of the contract, acknowledge a difference in the value of money at different points within the territory of the State. They certainly show that the law itself, under a great variety of conditions, will produce the very results, which, being contemplated in the contract, are said to impart the taint of usury. A note made in the country and payable in the city, is said to be void for usury, when the exchange is in favor of the latter. *141 But if not so payable according to its terms, yet the law requires the debtor to go to his city creditor, and there make a tender in coin at the par of exchange. So, if the debtor have property there, the debt may be collected by legal process, wherever the parties may reside, and without regard to the place of payment specified in the contract. It cannot, I think, , be unlawful to stipulate for that which the law itself exacts in i such varied circumstances, especially when we consider that the stipulation gives no advantage to the creditor when he ; comes to enforce the contract at the debtor’s place of residence in the interior.
No one has ever supposed that contracts like the one in question were usurious, where the borrower expected funds at the place of payment arising in the course of his own business (for example, out of a consignment of property) in order to meet his obligation. ■ But the distinction between such a case and one like the present rests upon no solid foundation. In both instances, the gain to the creditor, and the loss to the debtor, if any, are precisely the same.
If there be a course of exchange in favor of the place of payment, the debtor’s funds at that place are worth a premium at the place of the contract. If he gives them to the creditor in discharge of the obligation, it would seem to be plain that the lender gains, while the borrower loses, the amount of such premium. But if we hold such transactions to be infected with usury, we unsettle the very foundations of business and credit. No one is prepared for such results; and yet there is no way of avoiding them, and at the same time of maintaining a consistent rule of law, unless we hold that the place, as well as the time, of payment may be agreed on between the parties, without bringing the validity of the contract into question and doubt.
The cases cited to sustain the defence do not conflict with these views. In The Seneca County Bank v. Schermerhorn (1 Denio, 133), the note was payable at the country bank where it was discounted. No question like the present could, therefore, arise. The usury consisted in requiring the maker to *142 deposit-in the-bank, at par, a draft on New York, worth three-fourths of one per cent premium, and this was considered equivalent to exacting the payment in money of a sum equal to the .premium as the condition' of the loan. In Williams v. Hance (7 Paige, 581), a bond and mortgage were given for the forbearance of a previous-debt; and the new security included $20 -for the creditor’s traveling expenses, and fifteen days’ extra interest under-a pretence that it would take that length "of time to transfer the money, when paid, from Glens Falls, where the debtor resided, to the creditor’s residence- in New York. On these grounds, the bond and mortgage were held to be 'usurious. In Merrit v. Benton (10 Wend, 117), a note was ’given on the extension of a prior debt, which, besides interest; included one per cent exchange between Utica, where •it was made payable, and New York, the residence of the creditor. This was held not to be usurious. In The Ontario Bank v. Schermerhorn (10 Paige, 109), the loan was made in a ’draft drawn by the country bank, payable in New York, on which a premium was charged, not exceeding the rate of exchange. The court held there was no usury in the transaction, the draft being given for the accommodation of the borrower himself. Instead of the money, he preferred a draft on New York, at the current price. The transaction was clearly a lawful one. The case of The Cayuga County Bank v. Hunt (2 Hill, 635), involved a similar principle; and the decision was the same way.
Upon the whole, we are of opinion that the facts alleged in the answer had no tendency to establish the defence of usury, and, therefore, that the evidence was properly excluded.
The judgment must be affirmed.
Allen, J.
The statute of usury declares that all notes, bonds, &c., whereupon or whereby there shall be reserved or taken any greater sum or greater value for the loan or forbearance of money than at the rate of seven per cent, shall be void. That is, if by the contract of the parties the borrower shall be compelled to pay, if he performs his contract,. *143 and the lender will receive, the amount of his principal loaned and more than seven per cent interest, or if the lender will receive his principal and legal rate of interest, and will have the right, at his option, to receive an additional pecuniary benefit, the contract shall be void. There must be a certainty, at the time of making the contract, that a greater sum or value than seven per cent is received, taken or reserved by the lender. In this case, there is nothing on the face of the contract showing a reservation of more than the legal rate of interest, unless it is that the note was payable in the city of Hew York; and this, it is contended, constitutes the usury. It is urged that the difference in exchange, between distant places within the State, is a matter of real and substantial value, and that the courts of this State have repeatedly decided it so to be. The cases cited in support of this proposition decide that charges for a difference of exchange between different places is lawful, and that a deduction of such difference between country and city funds, in addition to the usual discount, is not usury. (7 Paige, 581; 10 Wend., 117; 10 Paige, 109; Cayuga County Bank v. Hunt, 2 Hill, 635.) The deductions in these cases, however, were rmiformly of the amount or value of the (then) present rate of exchange, and not of any future contingent and uncertain value.
In the present case there was no deduction of any rate of exchange, but the note was discounted at the usual rate of interest taken in advance, and which was deemed to be lawful in the case of Marvine v. Hymers (2 Kern., 230). It is true the defendants resided at Buffalo at the time of the discount, and that the note was made payable in Hew York, not for their particular accommodation; nor does it seem to have been insisted upon by the plaintiff, that it should be so made payable as a condition of its being discounted. It was due seventy-five days after its date; and when discounted, the difference of exchange was one-half of one per cent in favor of the city of Hew York. But it did not follow, to a legal certainty, that such difference would exist when the note matured; though, “ from our knowledge of the course of *144 trade” (as Judge Demo remarks, in Marvine v. Hymers, 2 Kern., 233), “ we may suppose that but little doubt could be entertained upon that point. Still, no one could legally know that funds would be worth as much then in ¡Ñew York, as when the discount was made.” I am disposed to concur in that view, and cannot, therefore, indorse the position, that, “ until some extraordinary and unlooked for revolution occurs in the domain of trade and commerce, we may look for the current óf money to flow from the country to the great marts, where the merchandise of the world is purchased and distributed, with about the same certainty that we may for the streams to seek the ocean,” &c. The rate of exchange upon inland bills is not fixed by law, as in the case of foreign bills. It depends upon the changes- and fluctuations of trade. Though probable, it is not absolutely certain, that the difference, in favor of Mew York would continue to be, as it then was, at one-half per cent. If, as in the case of The Seneca County Bank v. Schermerhorn (1 Denio, 133), where $22.50 was paid and taken in sight drafts, when the rate of exchange was in favor of Mew York to that amount, the contract would undoubtedly have been usurious. It is of no consequence to say, that making the note payable in New York imposed upon the defendants the additional burden and expense of transmitting funds there to meet the note at maturity. The place of payment is always as much a matter of agreement and regulation between the parties as the time. It is frequently a matter of accommodation to the maker to pay at a distant place. But suppose, in this case, it was not for the accommodation of the defendants and they did not pay at maturity, what amount could have been recovered, or what amount is actually to be recovered, if the judgment is affirmed? Simply the face of the note and interest; and a tender of that sum before suit brought would have extinguished the note. Its payment could have been enforced in Mew York, as well as in Buffalo—that is, if property could have been found in either place upon which to levy an execution—no matter at which place it had been payable. But no more could have been recovered than the amount secured by *145 the face of the note. A dollar was worth no more in one place than another. The difference of exchange could not have been recovered, because such payment was not due by the contract. If the bank had been credited in Hew York with the avails of the note, it would have been funds there to its use; but if not paid, the note would be, as it was, returned. The difference of exchange, if it still existed, would have been, charged back upon them. It had no absolute control or option in the matter. I am not prepared to say, nor is it necessary-in this case, that if the note had, upon its face, reserved the seven per cent, and had contained an agreement to pay the difference of exchange, whatever it might be, and the additional fact had been averred and proved, that it was a further condition of the loan, that the defendants should receive the proceeds in drafts on Hew York, charging a premium of exchange, that the transaction would not have been usurious: but this case presents no such aspects. It is the veiy common one, of discount of a note by a country bank, payable in Hew York, on time, at the usual rate of discount or interest, with the chance that the difference of exchange may be in favor of the place where the note is payable at its maturity.
I think the decision of this court in Marvine v. Hymers) already cited, disposes of this case, and that it is unnecessary to pursue the inquiry further.
It was urged, that the question of usury was one of intent, to be derived from the facts, and that this was a question for the jury. It does not appear, upon the bill of exceptions, that the defendants insisted upon going to the jury upon the question of intent, nor that they specifically excepted to any decision of the court excluding them from the jury on that ground.
But conceding the point to be well presented by the bill, there was no question of fact on which an intent or device to avoid the statute could be inferred. Before the question of intent is arrived at, to be submitted to the jury, a contract must be proved from which it may be inferred. It has been shown that there was nothing upon the face of the note secur *146 ing a greater rate of interest than seven per cent, nor were there collateral facts outside, as in Merrills v. Law (9 Cow., 65); Austin v. Fuller (12 Barb., 360). To constitute usury in this case, we are to assume that the rate of discount would be in favor of ¡New York at the time the note became due; which, in our judgment, we cannot do.
. It was argued, that if the plaintiff was permitted to recover in this case, every country bank might, and probably would, require all notes presented to them for discount to be payable in the city of ¡New York, or wherever the rate of exchange would seem to favor the lender. We are not here to decide upon probabilities, or to speculate upon views which may be taken of future supposed cases. We take the present one as we find it, and discuss the question, and that only, which the facts present us. If the law is not broad enough in its provisions to correct all the evils which may be imagined to exist, the remedy is with, the Legislature, and not with the courts.
Selden and Gray, Js., dissented; all the other judges concurring,
Judgment affirmed.