NEW YORK COUNTY.—HON. D. C. CALVIN, SURROGATE.—MARCH, 1877.

## WILLIAMSON v. WILLIAMSON

*In the matter of the Probate of the Last Will and Testament of* GEORGE W. WILLIAMSON, *deceased.*

The signatures of the attesting witnesses need not immediately follow that of the testator; but the attestation clause may intervene.

A will was proved by a full attestation clause, by proof of the handwriting of testator's signature, and that of two subscribing witnesses, deceased, and by the testimony of an attorney who was a third subscribing witness; and it appeared that the testator was also a lawyer, and the will was in his handwriting. *Held,* sufficient.

The provision of 2 *R. S.,* 58, § 13, that the proponent of a will for probate, on proving it by the handwriting of the testator and deceased witnesses, should give proof of such other circumstances as would be sufficient to prove the will on a trial at law,—does not require further evidence than this.

THIS was a proceeding for the probate of the last will and testament of George W. Williamson, deceased.

The will appeared to have been executed on the 24th day of July, 1866, in duplicate, one of the two originals being in the handwriting of the testator, he having been a lawyer. It was witnessed by Cornelius R. Sutton, Isaac Fryer, and George J. Greenfield.

The witnesses subscribed their names as such, only at the close of the attestation clause, and not at the foot of the will, at the left of the testator's signature.

The witnesses Sutton and Fryer, were shown to be dead, and their signatures were proved by Mr. Greenfield, one of the subscribing witnesses who saw them sign, and also by two other witnesses, George L. Kingsland, and Enoch Armitage, and the witness Kingsland, also testified to the genuine signature of the testator subscribed to the will.

The testimony of the witness Greenfield, an attor-
ney, showed a full compliance with the statute, in re-
spect to the execution of the will; that it was signed
by the testator in the presence of all three of the wit-
nesses; that the testator declared to them that it was his
last will and testament, and requested them respectively,
to subscribe their names as such, and they did so, in his
presence, and in the presence of each other.

JOHN L. SUTHERLAND, *for the proponents.*

JOHN McKEON, *for the contestants.*

THE SURROGATE.—The learned counsel for the con-
testant in this matter interposes two objections to the
probate of the will in question.

1st. That the subscribing witnesses have not signed
their names as such, at the end of the will, but at the end
of the attestation clause, and he cites several authorities,
among others, *Jackson* v. *Jackson* (39 *N. Y.*, 159), to show
that the attestation clause is no part of the will, and
therefore that the witnesses should have signed their
names opposite that of the testator, and if the attesta-
tion clause were added, the witnesses should have sub-
scribed it also.

While the strict language of the statute gives color
to this objection, yet it is a startling proposition, which
would practically destroy almost any will executed since
the enactment of that statute. In the case of *Jackson*
v. *Jackson (supra,)* no such question arose, but the ques-
tion there was, whether the will was duly proved, not-
withstanding the attestation clause did not recite all the
details of the execution, and the learned justice who
gave the opinion of the court in that case, says: "As a
memorandum of what occurred, and as a means of se-
curing the attention of the witnesses to the fact that all
required formalities have been observed, it is very de-

sirable that it should be full and precise in details. Sometimes when the witnesses are dead, it may be of great importance as presumptive evidence of due execution."

In *McDonough* v. *Loughlin* (20 *Barb.* 238), which was a case where the attestation clause contained also a memorandum of erasures, and interlineations in the will, and the attesting witnesses subscribed at the end of this memorandum, the court say : " The legislature undoubtedly intended that the certificate of attestation should intervene between the body of the will, and the names signed by the witnesses. The memorandum of the erasures, and interlineations, is merely part of the certificate. Taken together, it states, that the paper as altered, was executed by the testator and attested by the witnesses. That so far as I know is, and was before the adoption of the Revised Statutes, the usual practice, where there are alterations to a will, as at first drawn, and it seems to me, is free from objection, and very proper. The alterations in the will are quite numerous ; the memorandum is consequently a long one, but that, in the absence of any charge of fraud can make no difference."

In the *matter of Cohen* (1 *Tucker*, 286), it was held that the subscription by the testator, at the end of the attestation clause, was a compliance with the statute.

I think it will be found that all the precedents show that where there is an attestation clause, the signatures of the witnesses are subscribed to the attesting clause.

2d. The counsel for the contestant also objects to the probate on the proof, because under section 13, of 2 *Rev. Stat.*, 58, the proponent should give such other circumstances as would be sufficient to prove such will on a trial at law, in addition to the proof of the handwriting of the testator, and of the witnesses dead.

It is not easy to understand what is meant by the language of the section last cited: " such other circum- stances as would be sufficient to prove such will on a trial at law;" for cases may be easily imagined where no others than the testator, and the subscribing wit- nesses, were present at the execution, and where noth- ing was ever said by the testator thereafter, in respect to his having made a will, and in such case, no addi- tional circumstances would seem to be within reach of the proponent.

In *Butler* v. *Benson* (1 *Barb.*, 538), the will had been published, if at all, about ten years before the hearing. One of the subscribing witnesses had nearly forgotten the whole transaction, and the other was almost as much lost, on many important points.

The court held, that where the witnesses are dead, or from lapse of time, do not remember the circumstan- ces attending the attestation, the law, after diligent pro- duction of all evidence then existing, and if there are no circumstances of suspicion, presumes the instrument properly executed.

The facts proved in this case bring it clearly within the principle of *Orser* v. *Orser* (24 *N. Y.*, 51), and *Corn- well* v. *Wooley* (45 *How. Pr.*, 475.) In the first place it is quite clear that the proof furnished would be sufficient to prove the will in question on a trial at law, and in the second place, the circumstances additional to the ordinary proof of execution are very significant, and relieve the case from all substantial doubt in respect to the due execution of the will in question.

In addi ion to the formal proof made by the witness Greenfield, the fact that said Greenfield was an attorney and familiar with the requisites to such execution, and that the signatures of the testator, and of the deceased subscribing witnesses were proved by an impartial wit-

ness other than the subscribing witness, and the facts that the testator himself was a lawyer, and therefore presumed to understand how such an instrument must be executed to secure its validity, and that one of the duplicate wills was in his own handwriting, leaves no doubt in my mind that the will has been duly proved, and its probate should be decreed.

Decree accordingly.