WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURROGATE.—January, 1882.

SPENCER *v.* SEE.

*In the matter of the accounting of* JAMES S. SEE, *and others, executors, etc., of* JOHN MILDEBERGER, *deceased.*

The claim of a legatee under a bequest upon a *contingency*, or where there is a possibility coupled with an interest, is assignable in equity; otherwise as to a bequest upon a *condition precedent*, before performance.

M. died in 1871, leaving both real and personal estate, three grandsons, A.,

B. and C., his only descendants, and a will whereby, after certain bequests, he ordered his executors to invest the residue of his realty and personalty on bond and mortgage, the interest to accumulate until the times afterwards mentioned. He then devised and bequeathed to A. one-third, and to C. one-third of his realty and personalty, to be paid to them, respectively, at marriage. The remaining one-third he devised and bequeathed to A., at his marriage, in trust to pay the interest thereof semi-annually to B., "upon the express condition" that the latter renounce the Roman Catholic priesthood, payment of interest to commence at the time of renunciation; and, upon condition that B. should marry, he devised and bequeathed such third, with accumulations, to B., absolutely. Should B. die before marriage, his share was given to A., at marriage. M.'s will empowered, but did not order, his executors to sell and convey any and all of his realty. C. married° in 1879, and received his third. On September 2, 1881, A. married; on September 15, B. released and assigned, under seal, to A., all his rights under the will, and A. received from the executors $28,000, on account of the two shares; on September 26, A. died, leaving a will. A contest arising between the executors of M. and of A., on the formers' accounting, as to the ownership of B.'s third,—*Held,*

1. That, the scheme of the testator, M., requiring a conversion, the will must be deemed to treat of personalty only.
2. That the bequest of B.'s third was not upon a *contingency,* but upon *conditions precedent,* neither of which had been performed; that, therefore, the legacy did not vest in interest, and nothing passed by B.'s assignment to A.
3. That A. had a possibility coupled with an interest in B.'s third, and, should B. never renounce or marry, his third would pass to the representatives of A.
4. That the fund of which A. was made trustee passed into the hands of his executors.

Whether the Surrogate's court has power to appoint a trustee of a fund in such a plight, *quære.*

JOHN MILDEBERGER died in the year 1871, leaving a will. His only descendants were three grandsons, Seymour H. Spencer, Selden M. Spencer and William E. Kenyon. He died seized and possessed of both real and personal estate. After bequeathing certain legacies, the will proceeded as follows :

" *Sixth.* After my death, I hereby order and direct my executors hereinafter named to invest all the rest,

residue and remainder of my real and personal property in bonds and mortgages in the county of Westchester, on property worth double the amount, with interest at seven per cent., payable half yearly, farms being preferred, said interest to accumulate until such times as are hereinafter named.

"*Seventh.* I give, devise and bequeath to my grandson Selden M. Spencer one-third of all my real and personal estate not hereinbefore disposed of, to be paid to him at the time of his marriage.

"*Eighth.* I give, devise and bequeath unto my said grandson, Selden M. Spencer, at the time of his marriage, one other third of my real and personal estate not hereinbefore disposed of, *in trust* to pay the interest thereof semi-annually to my grandson, Seymour H. Spencer, upon the express condition that the said Seymour H. Spencer shall renounce the Roman Catholic priesthood, said payment of interest to commence at the time of such renunciation ; and, upon the further condition that the said Seymour H. Spencer shall marry, I give, devise and bequeath the said money held in trust, together with the accumulated interest thereon, to my said grandson Seymour H. Spencer.

"*Ninth.* I give, devise and bequeath the one other remaining third of all my real and personal property not hereinbefore disposed of to my other grandson, William E. Kenyon, at the time of his marriage.

"*Tenth.* In case of the death of the said Seymour H. Spencer before marriage, I give, devise and bequeath his said share to my grandson Selden M. Spencer, at the time of his marriage.

"*Fourteenth.* I do hereby authorize and empower my

executors hereinafter named to sell all or any of my real estate, and to give good and sufficient deeds therefor."

W. E. Kenyon married in 1879, and shortly thereafter received his one-third. On September 2, 1881, Selden M. Spencer was married. On the 15th of the same month, after said marriage, Seymour, by deed under seal, duly released and assigned all his rights under the will to Selden, and on the same day the executors paid to Selden $28,000, on account of the two shares. Afterwards, and on the 26th of the same month, Selden died, leaving a will which was duly admitted to probate, the executors of which now claimed that they were entitled to receive, from the executors of John Mildeberger's will, the one-third referred to in the eighth clause of the will, as well by virtue of that will as of Seymour's assignment ; that the true intent, as gathered from the will, was that, upon Selden's marriage, the one-third mentioned in the eighth and tenth clauses should vest in him, subject to being divested by Seymour's renunciation of the priesthood, and marriage ; that the title thereto did so vest in Selden as a vested remainder, and was so vested at the time of the assignment by Seymour, "descendible, devisable and alienable"; that the assignment by Seymour freed the estate, already vested in Selden, from Seymour's contingent estate, and it thereupon became a full estate in Selden.

On behalf of the executors of Mildeberger, it was claimed, among other things, that Seymour had no assignable interest, and that the fund must remain in the hands of a trustee to be appointed by the court, to await the performance of the conditions by Seymour.

On the part of Seymour, it was insisted that, as it

was personal estate, if it should be determined that nothing passed by the assignment, the executors of Selden were entitled to the fund.

L. T. YALE, *for executors.*

ALEXANDER & GREEN, *for executors of S. M. Spencer.*

DANIEL WHITFORD, *for S. H. Spencer.*

THE SURROGATE.—The first question to be considered is whether the funds of the estate are to be treated as real or personal property. Counsel for one party bases his argument partially upon the idea that they are to be regarded as land, while the other counsel proceeds upon the theory that they are wholly personal, the fact being that they consist partly of personal property belonging to the testator at the time of his death, and partly of the proceeds of real estate sold by his executors under the authority contained in the will. What portion was purely personal, and what proceeds of sales of realty, does not appear. The question—to which they are to be regarded as belonging, and whether wholly to one, is not discussed by the learned counsel; but it seems to me to be essential first to determine that point, in order to a correct disposal of some questions arising in the case. It is true, then, that the testator does not, in terms, order a sale of his real estate, but does clothe the executors with authority to sell. But, as they cannot execute the provisions of the will as to the residue of his estate, without effecting a sale of the real estate, and as the scheme of the will requires such sale, it was obviously the intention of the testator to blend both real and personal into a money fund, to be invested by the exec-

utors as directed. Sir JOHN LEACH, V. C., in Smith *v.*
Claxton (4 *Madd.*, 484), cited in Marsh *v.* Wheeler
(2 *Edw. Ch.*, 159), says that "a devisor may give to his
devisee either land or the price of land at his pleasure;
and the devisee must receive it in the quality in which it
is given, and cannot intercept the purpose of the devisor.
If it be the purpose to give land to the devisee, the land
will descend to his heir; and if it be the purpose of the
devisor to give the price of land to the devisee, it will,
like other money, be part of his personal estate." (See
Dodge *v.* Pond, 23 *N. Y.*, 69). Hence, as to any ques-
tion here involved, the will must be regarded as treating
of mere personal estate. In so far, however, as the effect
of the assignment by Seymour is concerned, it can make
no material difference, as the rules applicable to the
validity and effect of it are substantially the same,
whether it be real or personal.

The bequest to Seymour is based upon two condi-
tions, neither of which has been performed. During the
lifetime of his brother Selden, and after his marriage, he
assigned to him by deed, under seal, all his interests
under the will. The chief question for consideration, in
that regard, is—had he any interest which was assign-
able? It has been long since settled that contingent
interests, both in real and personal estate, are transmis-
sible, like vested interests, and that a possibility coupled
with an interest is assignable in equity (Jones *v.* Roe,
3 *Term R.*, 88; Jackson *v.* Varick, 7 *Cow.*, 247; Wins-
low *v.* Goodwin, 7 *Metc.*, 363; and many more recent
authorities). But the will does not create an interest
depending upon a mere contingency; it attaches a con-
dition precedent to the gift. A *contingency* is some

specified time, thing or event, in the future, which may or may not occur. A *condition precedent* implies an existing fact, or state of facts, which must be so changed as to bring it into a condition desired. It is also a general rule that, if an estate be given on a condition, for the performance of which no time is limited, the devisee has his life for performance (2 *Jarm. on Wills*, 5 Am. ed., 510, n.); but of course, that is a right personal to himself. Mr. Jacobs (*Law Dict.*, tit. "Condition"), says that "conditions precedent are such as must be punctually performed, before the estate can vest." In Loder *v.* Hatfield (71 *N. Y.*, 98), it is declared to be a general rule that a postponement of the time of payment, even, will not of itself make a legacy contingent, unless it be upon an event of such a nature that it is to be presumed that the testator meant to make no gift unless that event happened. *Jarman on Wills* (vol. 2, 429) also lays down the rule that a legacy does not vest where a condition is to be performed by the legatee.

If a man release all his right in land, this extends to all his present right, though he has a present right only to a reversion or remainder, after an estate for life or years *in esse;* also though he has only a possibility upon a condition broken, or a contingency. There is a distinction between possibilities which are releasable and those which are not. When there is an *existing right* in one, which cannot be defeated by the volition or action of another, to a future estate upon a contingency, there is something upon which a release might operate (Miller *v.* Emans, 19 *N. Y.*, 384). But where the only existing right is to fulfill or not to fulfill the condition, nothing passes by assignment, because it is not a material right,

but is purely personal. Here, where there is a condition precedent and a possibility of performance, no interest arises until compliance with the condition, which was a condition precedent to the legacy's vesting (Caw *v.* Robertson, 5 *N. Y.*, 134). There is no present capacity in Seymour to take, and therefore the legacy is not vested in interest. It would be absurd to say that, disregarding the assignment, he has an interest which is transmissible to his personal representatives; but, should he never renounce nor marry, the fund in question, at his death, would pass to the personal representatives of Selden, as to whom there was such a possibility coupled with an interest as to render it assignable by him in equity.

It is very plain that the testator intended to make no gift whatever, unless the first condition, which is affirmative and precedent, was complied with. While, therefore, I am satisfied that nothing passed by the assignment, still I think it may operate as an estoppel against Seymour, in the hands of Selden's executors.

I am further of opinion that the fund of which Selden was made trustee, being personal assets, passes into the hands of his executors. It is, therefore, unnecessary to discuss the question whether this court has power to appoint a trustee in such a case, although I am free to say I think it has not.

Decreed accordingly.