In re BECK'S WILL.

(Supreme Court, Appellate Division, Second Department.    June 9, 1896.)

1. WILLS—EXECUTION—SIGNATURE OF WITNESS.
   A will is signed by the attesting witnesses at the end thereof, as required by 2 Rev. St. p. 63, § 40, though the signature of testator precedes the attestation clause, while the signatures of the witnesses follow it, and the attestation clause is carried entirely across the page, separating testator's signature from those of the witnesses.

2. SAME—PROBATE—TAKING ADDITIONAL TESTIMONY.
   It is discretionary with the surrogate, pending a hearing in a probate proceeding, to allow either party, though he has rested, to offer further evidence.

3. SAME—RIGHTS OF LEGATEE WHO IS ATTESTING WITNESS.
   The question whether a legatee who is an attesting witness forfeits his legacy by testifying in the probate proceeding cannot be raised in such proceeding.

4. SAME—MOTION TO STRIKE OUT TESTIMONY.
   Where a legatee, who is also the executor and an attesting witness, offered to testify as to the execution of the will, and his testimony was received without objection by contestants, it is error for the surrogate afterwards, on his motion, to strike out his testimony.

Appeal from surrogate's court, Kings county.

Proceeding for the probate of the will of David F. Beck, deceased. From a decree admitting the will to probate, contestants appeal. Affirmed.

Argued before BROWN, P. J.,. and BARTLETT, CULLEN, and HATCH, JJ.

Robert Stewart, for appellants.

George C. Comstock, for respondent.

Francis A. McCloskey, special guardian.

CULLEN, J.    The first claim on the part of the appellants is that the attestation of the will is defective, in that the witnesses did not sign their names at the end of the will, as required by the statute.[1] This claim is based on the fact that the attestation clause is carried entirely across the face of the instrument, and separates the testator's signature from those of the witnesses; the former signing above that clause, and the latter below it.    The argument is that the statute requires the signatures of both the testator and the witnesses to be made at the end of the will, and that, hence, all the signatures must be found together, and that nothing can intervene between them.    This point, based on the strict language of the statute, is not new.    It was raised in McDonough v. Loughlin, 20 Barb. 238, and was there held not well founded.    In the opinion there delivered, Judge Strong writes:

"I can see no valid objection to the manner in which the witnesses to the execution of the will subscribed their names. The legislature undoubtedly intended that the certificate of attestation should intervene between the body of the will and the names signed by the witnesses. The memorandum of the erasures and interlineations is merely a part of the certificate. Taken together, it states that the paper, as altered, was executed by the testator and

[1] 2 Rev. St. p. 63, § 40.

attested by the witnesses. That, so far as I know, is, and was before the adoption of the Revised Statutes, the usual practice where there are alterations to the will as at first drawn, and it seems to me is free from objection, and very proper."

In Williamson v. Williamson, 2 Redf. Sur. 449, the same rule was held. In Woolley v. Woolley, 95 N. Y. 231, the opinion recites that beneath the signature of the testator was the attestation clause, and that then below that were the signatures of the witnesses. The decree, admitting to probate the codicil so signed, was reversed; but there is not to be found in the opinion even a suggestion that the subscription by the witnesses was defective or erroneous. The advantage of a full attestation clause in sustaining the proof of a will, where the recollection of witnesses may fail, is well known. The custom which Judge Strong says was usual in his experience has continued up to the present time, to such an extent as to be nearly universal. We think that this method of signature by witnesses complies even with the strict language of the statute. But we refuse to treat as debatable the validity of a practice in a purely technical matter, involving no question of right or wrong, which has been almost invariably adopted, and upon which to-day the title to a great part of the property within the state depends.

The will was offered for probate, by one George B. Owen. Owen was not only the executor named in the will, and the legatee and devisee of one-third part of the estate, but he was also the third subscribing witness to the will. On the hearing before the surrogate the proponent did not rest upon the testimony of the two other subscribing witnesses, but offered himself as a witness to sustain the will. He was examined at length, not only as to the formal execution of the will, but also as to the mental condition of the testator, and the instructions of the testator as to the preparation of the will. At the close of the evidence the contestants moved that probate of the will be refused. This motion was denied. The surrogate then expressed orally his decision that the will was duly executed, that the testator had testamentary capacity, and that the contestants had failed to prove undue influence. The learned surrogate then said:

"There is but one doubt I have in regard to the matter whether the legacy to Mr. Owen is void,—whether there was such an identification of this testator as would be necessary under the statute. I will not decide that at the moment."

To this the counsel for the proponent replied:

"If there is any doubt on the mind of your honor as to the identity of the testator having been properly and fully proven, I will produce further evidence on that point, and Mr. Owen's testimony may be stricken out."

The surrogate stated that he would reserve his decision on the point. Subsequently the surrogate filed this memorandum:

"The identity of the testator is not sufficiently established without the testimony of Mr. Owen. The proceeding may be opened to afford the proponent an opportunity to establish testator's identity by further proofs, if he so desires; otherwise, the will is admitted to probate, and Mr. Owen cannot take under the will."

Against the objection of the contestants, further evidence was thereafter given on the part of the proponent tending to identify the testator by showing the signature to the will to be in his handwriting. At the close of the case, on the motion of the proponent, the evidence of the witness Owen was stricken out. To this the contestants duly excepted. Thereafter the decree appealed from admitting the will to probate was made.

The contestants contend that the surrogate had no authority to take further proof; that it was, in fact, a rehearing, which it was not within the power of the surrogate to grant. We think that this contention is clearly erroneous. It was entirely within the discretion of the surrogate, pending the hearing, to allow either party, at any time, to offer further evidence, even though such party had rested his case. It is clear that the hearing was not concluded, but only suspended, when the surrogate announced his doubt as to the identification of the testator, apart from the evidence of Owen. The surrogate, therefore, had the right to receive the further evidence. But the surrogate was not justified in striking out the evidence of the witness Owen. The question whether Owen forfeits his legacy and devise by testifying as a witness does not arise in the proceeding to prove the will. That question will come up when the witness seeks to retain his legacy or devise, either on his accounting as executor or in an action brought for the purpose. It is in such litigations only that we have any decisions on the subject. Caw v. Robertson, 5 N. Y. 125; Cornwell v. Woolley, 1 Abb. Dec. 441; Matter of Brown, 31 Hun, 166. Therefore we should not now express any view on the subject.

But, assuming that by leaving the testimony of the proponent in the case he will forfeit the provisions of the will in his favor, we think that is not sufficient reason why he should have been permitted to withdraw it. His testimony was offered and received without objection by the contestants. Had the contestants objected, the objection would have been untenable, for by section 2544 of the Code a subscribing witness is not disqualified or excused from testifying to the execution of a will by a provision therein, beneficial or otherwise. In re Will of Eysaman, 113 N. Y. 62, 20 N. E. 613. Nor did the fact that the witness resided without the state relieve him from examination as a witness upon the demand of the contestants. Sections 2618 and 2619 of the Code differ somewhat from the provisions of the Revised Statutes on the same subject. Under these sections a subscribing witness is to be examined if within the state, whether a nonresident or not. So it is not so certain that the proponent can now save his legacy by the fact that he was a nonresident of the state. However this may be, the question was for the proponent to determine whether he would risk judgment on the probate of the will without his own evidence, or testify and run the risk of the effect of appearing as a witness. He made his election and gave his testimony. It would be unfair, after the proponent had obtained practically an announcement of a favorable decision from the surrogate, to let him, at such a time, change his course of action, and withdraw his testimony. The proponent made

his election, and should take the consequences of that election, whatever they may be.    By section 2586 of the Code we are authorized upon this appeal to receive further evidence.    The testimony of Owen is already in the record.    We think the proper course is to reverse the ruling of the surrogate striking out that testimony, and reinstate it as evidence in the cause, and we shall proceed to the determination of the questions of fact involved in the case upon that testimony as well as the other evidence.

The identity of the deceased with the person who executed the will in the office of Davenport & Sons, we think, cannot be seriously gainsaid.    Owen testified that it was the deceased who there executed the will.    The signature of the will is testified to be in the handwriting of the deceased.    This fact is not contradicted, though several of the witnesses called by the contestants were familiar with the deceased's handwriting, especially the witness Cole.    That the testator had testamentary capacity, although his mind and senses may have become enfeebled by age, appears clearly by the evidence of the contestants, as well as from that of the proponent.    The only question susceptible of real controversy is whether the will was obtained by undue influence.    It appears that Owen had the will drawn by the lawyer, the testator not being present at the time.    It may be assumed that Owen had great influence with the testator, for he was his financial adviser, and he or his son acted as the depositary of the testator's money.    But the evidence does not show that such influence was exerted so as to frustrate or pervert the will of the testator.    The will, though it disinherits the testator's blood relatives in favor of those of his deceased wife, is not wholly unnatural. It appears that some 40 years prior to his decease there had been a total estrangement between the testator and his sisters and their families.    This continued until shortly before his death, when intercourse was resumed, though but to a very slight extent.    During this period the associations of the deceased had been with the relatives of his wife.    Mrs. Masters, a sister of the wife, and one of the devisees, had lived with the testator for 30 years up to the time of his decease.    We think that the provisions of this will may properly be referred to the natural effect of these associations, and his estrangement from the members of his own family, instead of to the exercise of undue influence.    The decision of the surrogate in this respect was, therefore, correct.

We think it proper to call the attention of the parties to the consideration whether it is now worth while to prosecute such appeals as the present one.    By section 2653 of the Code (as amended in 1892) any person interested in a will may cause the validity of the probate thereof to be determined by a jury, in an action brought in the supreme court for that purpose.    Should we reverse the decree of the surrogate on the questions of fact in this case, the only relief we could grant the appellants would be to direct the trial of the issues by a jury.    Section 2588, Code.    This relief or review the parties can obtain, as a matter of right, under the section of the Code first cited, without an appeal.    In fact, it can still be had in this case, as two years have not elapsed since the decree admitting the

will to probate.   It would seem that now an appeal from a decree
of the surrogate probating a will is only profitable where the ap-
peal is based solely on questions of law.

The ruling of the surrogate striking out the testimony given by
the witness George B. Owen should be reversed, and the testimony
reinstated.   The decree of the surrogate, appealed from, should be
affirmed, with costs to all parties, payable out of the estate.   All
concur.