Matter of the Probate of the Last Will and Testament of JOHN H. COGAN, Deceased.

(Surrogate's Court, Bronx County, December, 1917.)

Wills — loose pages — attestation clause — statutes — witnesses — testamentary capacity.

An instrument offered for probate as a last will consisted of three sheets of paper not fastened together but so arranged

that the page containing the date of the document was before that containing the signature of the testator and after that came the third page containing a clause which was not an attestation clause in the accepted sense of that term signed by the subscribing witnesses, and as so arranged the several sheets were folded and placed in an envelope. On the hearing of the petition for probate the facts of testator's testamentary capacity and that he declared the instrument to be his last will were fully established. The clause subscribed by the witnesses was dated and signed seventeen months after the date of the will, they signing the same in testator's presence and with his acquiescence after the will and said clause had been read to him. *Held,* that the statute having been substantially complied with, probate will be decreed.

Proceeding upon probate of a will.

McCabe & Hickey, for petitioner.

Robert A. B. Dayton, for respondent.

Schulz, S. The petition in this matter recites that the decedent left him surviving as his heirs at law and next of kin four cousins, three residing in Ireland and one in the city of New York. The propounded document consists of three sheets of paper, two of them similar in size, texture and appearance. The third is smaller in size, differs from the first two in texture and appearance, and contains the clause which the witnesses to the alleged will have signed and which is as follows:

" Fordham Hospital, 4/9/17. To whom it may concern: This is to certify that Mr. John H. Cogan, in sound mind, identified his cousin Mary Cullin as the one to whom he bequeathed his estate as specified in his last will dated Nov. 1st, 1915. Witnesses: Philip R. Zinn, M. D. Helen Hannigan.''

It will be observed that it is not an attestation clause

in the accepted sense of that term. The three sheets of paper of which the instrument consists were not fastened together, but the testimony is that they were arranged in the following order, that is to say, the page containing the date of the document, behind that the page containing the signature of the testator, and after that the third page containing the clause above quoted and the signatures of the witnesses, and as thus arranged they were folded and placed in an envelope. The contestants are the three cousins in Ireland. Their contentions urged by counsel are (a) that the decedent did not intend to make a will on the 9th day of April, 1917, when the witnesses signed; (b) that the decedent did not acknowledge his signature to the witnesses with the signature visible to them; (c) that there is no proof of any request on the part of the decedent to the witnesses to sign the instrument as witnesses, and (d) that the paper signed by the witnesses was not a part of the will of the decedent. It is undisputed that all of the alleged will down to and including the signature of the deceased is in his handwriting, and while the fact that the instrument is a holograph does not dispense with a substantial compliance with the formalities of execution prescribed by statute (Decedent Estate Law, § 21, being Laws of 1909, chap. 18, and constituting Consol. Laws, chap. 13), the authorities lean to the view that evidence of publication need not be as strong in such a case. *Matter of Akers,* 74 App. Div. 461; affd., on opinion below, 173 N. Y. 620; *Matter of Beckett,* 103 id. 167; *Matter of Hunt,* 110 id. 278. The evidence offered to show that the decedent was of sound mind, memory and understanding and over twenty-one years of age, and that he declared the said instrument to be his last will and testament, is not controverted, impeached or questioned, and I deem these facts fully established.

Under the terms of the document the decedent's property, with the exception of wearing apparel, is bequeathed to the cousin who resides in the city of New York. There is no allegation or intimation that it is the result of fraud, duress, undue influence or restraint. I am satisfied that it expresses fully the intention of the testator and that it is natural in its terms. There is no evidence before me as to when the paper was signed by the decedent. It is dated November 1, 1915, and was presumably signed at that time. The clause subscribed by the witnesses is dated and was signed on April 9, 1917. It is not open to doubt that at the time when the instrument was subscribed by the decedent he intended to make his will. That intention continued until it was carried out or was abandoned. There is no evidence of abandonment, and if it was not carried out and not abandoned it must still have existed on the 9th day of April, 1917, when the witnesses signed. The mere fact that this occurred over seventeen months thereafter is immaterial. I know of no case which holds that the document must be published and witnessed at the time of the subscription by the testator, and the provision of the statute to the effect that the signature shall be made by the testator in the presence of each of the witnesses or " shall be acknowledged by him, to have been so made, to each of the attesting witnesses " is clearly to the contrary. Nor does the statement in the clause as to the identity of the legatee warrant a presumption, in the face of evidence to the contrary, that the witnesses signed only to establish such identity. Their signing for that purpose was unnecessary. I therefore reach the conclusion that the decedent did intend to make a will on the day when the witnesses signed. The evidence that the decedent acknowledged his signature to both witnesses is conclusive. It is also clear that one of the witnesses saw

his signature. The testimony of the other witness on this point is uncertain, but she testifies that she was within two feet of the bed upon which the decedent was lying when he acknowledged his signature and that she could have seen it; and while she stated that the paper was folded she subsequently modified this by saying that at some time during the occasion in question the paper was unfolded, and finally that she did not know whether she looked at the signature or not. Under such circumstances the Appellate Division has held that there is a substantial compliance with the statute. *Matter of Akers, supra.* See, also, *Matter of Laudy,* 161 N. Y. 429. There is no direct testimony that the decedent in words requested the witnesses to act and sign as such. The document, including the clauses signed by them, and which described them as witnesses, however, was read to the decedent and he nodded his assent. They were at his bedside at the time. They signed in his presence and with his acquiescence. It appears evident to me that as between the testator and the witnesses there was a meeting of the minds upon the understanding that the instrument was the testa-tor's will; that it had been subscribed by him and that the attestation of the witnesses to the will so subscribed was desired. This constitutes a substantial compliance with the statute. *Matter of Turrell,* 166 N. Y. 330. No precise form of words addressed to the witnesses is required. *Coffin* v. *Coffin,* 23 N. Y. 9; *Gilbert* v. *Knox,* 52 id. 125. The last contention urged, namely, that the script signed by the witnesses is not a part of the propounded document, is, in my opinion, the most serious. If the three sheets had been fastened together, no difficulty would present itself, for the mere fact that the clause quoted above is between the signature of the decedent and those of the witnesses is of no more importance than if it had been a

regular attestation clause. In that event, the place of the signatures of the witnesses would have satisfied the statutory requirements. *Williamson* v. *Williamson,* 2 Redf. 449; *Matter of Beck,* 6 App. Div. 211; affd., on opinion below, 154 N. Y. 750. The danger of permitting witnesses to sign upon an unattached sheet of paper is of course apparent, but not necessarily fatal to the probate. *Matter of Snell,* 32 Misc. Rep. 611; *Matter of Fitzgerald,* 33 id. 325. In view of the testimony as to the arrangement and folding of the various sheets comprising the instrument in question, and the absence of any allegation or intimation of fraud, I am of the opinion that the document should be considered as though the three sheets had been fastened together. If thus regarded, the paper signed by the witnesses was a part of the propounded document and the signatures of the decedent and the witnesses are not only at the physical end, but also at what has been variously termed the "literary," "natural," "logical," "speaking" and "constructive" end. It follows that the instrument should be admitted to probate and it will be so decreed. Costs will be allowed to the proponent, payable out of the estate.

Probate decreed.